No. 39,757

Fred B. Johnson, Administrator of the Estate of Walter E. Keith, Deceased, *Appellee*, v. Lyle Killion, Doing Business As Killion Service Stations (*Appellee*), and Employers Mutual Casualty Company, *Appellant*.

(283 P. 2d 433)

Opinion filed May 7, 1955.

Robert C. Foulston, of Wichita, argued the cause, and George B. Powers, Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm

*Miller, Robert N. Partridge,* and *Robert M. Siefkin,* all of Wichita, were with him on the briefs for the appellant.

*Clayton M. Davis,* of Topeka, argued the cause, and *John E. Wheeler,* of Marion, *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope,* all of Wichita, and *John E. DuMars,* and *Mark L. Bennett,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action by the administrator to recover damages for the wrongful death of Walter E. Keith resulting from a collision between a motor fuel transport truck owned by defendant Lyle Killion, and a railroad train on which the deceased was an engineer. The defendants were Lyle Killion doing business as Killion Service Stations, and Employers Mutual Casualty Company, his liability insurance carrier.

The defendant Employers Mutual Casualty Company appeals from an order overruling its demurrer to plaintiff's amended petition.

We shall refer to appellee administrator as plaintiff, appellant Employers Mutual Casualty Company as defendant insurance carrier, and defendant Killion, who is not a party to this appeal, as defendant.

Inasmuch as defendant Killion has not appealed from any ruling of the trial court, the pertinent facts related in the amended petition, so far as they affect the appeal in behalf of the defendant insurance carrier, may be stated as follows: Plaintiff was the administrator of the estate of Walter E. Keith, deceased. Defendant Killion operated numerous automobile service stations, including the sale of gasoline, liquid fuels, etc., in the city of Wichita and adjacent territory within fifty miles thereof, and also owned and operated several motor vehicles with large tanks used for the transportation of such liquid fuels and other highly inflammable petroleum products over the public highways in Kansas. Defendant Employers Mutual Casualty Company was a corporation insuring against the risks and hazards incident to the operation of motor vehicles on the roads, streets and highways of Kansas, and was subject to service of process in Kansas. On June 27, 1953, Walter E. Keith was an engineer operating a railroad company's train and was involved in a collision with a truck operated by defendant Killion. The petition states the time, place and details of the collision, and that the truck operated by Killion's

agent was a semi-trailer tank truck loaded with 4,000 gallons of gasoline or other petroleum products of a highly inflammable and combustible nature, and as a result of the collision between the truck and the train, the gasoline or other petroleum products exploded, resulting in the death of Keith. The amended petition then alleged various acts of negligence against defendant Killion and his agent, as the proximate cause of Keith's death. It was further alleged that at all times defendant Killion was operating the motor vehicle involved in the collision on the roads and highways and transported gasoline, liquid fuels and other combustible products, pursuant to authority granted by the State under the provisions of G. S. 1949, ch. 55, art. 5, and ch. 66, art. 1, and amendments thereto, conditioned upon defendant furnishing and having in effect liability insurance issued by some insurance company authorized to do business in the State. Defendant Employers Mutual Casualty Company, prior to the date of the collision had issued its policy of liability insurance and the same was in full force and effect on the date of the accident insuring payment for injury or damage arising from the negligent operation of defendant Killion's vehicle, such insurance being in the sum of $500,000. Its policy of insurance was in the possession of and wholly within the knowledge of both defendants, and the coverage of said policy was not less than $15,000 for injuries or death of any one person resulting from one occurrence or related occurrences and, although required by the laws of the State, the policy of insurance was not filed with any of the administrative bodies as provided in the Act. Other allegations as to the amount of damage claimed are not material to the question herein. The petition closed with a prayer for judgment against both defendants in the sum of $15,000.

The sole question for our determination is whether the mentioned allegations are sufficient to state a cause of action against the insurance carrier.

G. S. 1949, ch. 55, art. 5, is an act providing for the transportation of oils and liquid fuels. Section 55-506 provides:

"This act is for the purpose of aiding in the administration and enforcement of the motor-fuel laws of this state, and shall be deemed to be supplemental to and a part of such laws."

Section 55-507 provides in pertinent part:

"No person shall transport any liquid fuels or motor-vehicle fuels from any refinery, place of manufacture or production, or pipe-line terminal, or across the

state line, in quantities of 120 gallons or more over any of the public highways of this state without having first secured from the director of revenue, and at the time holding, a valid and subsisting liquid-fuels carrier's license for each vehicle in which such person transports such fuels, nor shall any person transport any liquid fuels or motor-vehicle fuels in quantities of 1,000 gallons or more over any of the public highways of this state from any point of origin other than a refinery, place of production or manufacture or pipe-line terminal without having first secured from the director of revenue, and at the time holding a valid and subsisting liquid fuel carrier's license for each vehicle in which such person transports such fuels:  .  .  ."

## Section 55-508 provides in pertinent part:

"Any person who shall desire to transport any liquid fuels or motor-vehicle fuels over the public highways of this state may make sworn application to the director of revenue for a liquid-fuel-carrier's license  .  .  ., on forms prepared and to be furnished by the said director and containing the information required by him, and accompanied by the bond in this chapter provided for, and a fee of one dollar for each license applied for; and said director, upon finding such application and bond to be in compliance with law, shall issue to such applicant the number of liquid-fuel-carrier's licenses applied for, but not exceeding one for each vehicle owned and to be used by the applicant in such transportation business.  Each such license shall be numbered and dated, shall show the name and address of the person to whom it is issued and shall fully identify the vehicle in which it shall authorize motor-vehicle fuels or liquid fuels to be transported.  .  .  ."

## Section 55-509 provides in part:

"Before the director of revenue shall issue any motor-vehicle-fuels or liquid-fuels carrier's license or licenses he shall take from the applicant, *in addition to the liability insurance required by the motor-carriers act of this state,* a penal bond in favor of the state of Kansas, with corporate surety authorized to do business in this state in the sum of one thousand dollars ($1,000), conditioned that such applicant or licensee will comply with all the provisions of this act,  .  .  ." (Emphasis supplied.)

The last mentioned section requires that the director of revenue take from applicants for liquid-fuels carrier's licenses the liability insurance required by the motor-carriers act of this state (G. S. 1949, ch. 66, art. 1).  Section 66-1,128 provides in pertinent part:

"No certificate or license shall be issued by the state corporation commission to any 'public motor carrier of property,'  .  .  ., 'contract motor carrier of property  .  .  .' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by, the state corporation commission, *a liability insurance policy in some insurance company* or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary *to adequately protect the interests of the public* with due regard to the number of persons and amount of property involved  .  .  ., *which liability insurance shall bind the obligors there-*

*under to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier. . . ."* (Emphasis supplied.)

The language of section 55-509 requiring the director of revenue to take from an applicant for a liquid-fuel carrier's license liability insurance required by the motor carrier act is unequivocal, inescapable and mandatory. Such insurance as required by this section is the liability insurance as set forth and provided in section 66-1,128 of the Motor Carrier Act. It is clear that the legislature in enacting section 55-509 made the provisions of section 66-1,128, with reference to liability insurance and conditions relating thereto, a part of the Liquid Fuel Act. In this state the legislature may, without violating the constitution, extend the provisions of an existing statute to a new subject by an appropriate reference to such statute in the new act, and when the provisions of a statute are extended by reference, it is not necessary that any particular formula of reference be employed if the necessary inference from the general meaning of the new act and the purpose of the legislature in framing it be that the former statute shall govern the new subject, the extension is as clear as if studied expressions to effect it had been used.

The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. (*State v. Shawnee County,* 83 Kan. 199, 110 Pac. 92; *State, ex rel., v. Davis,* 116 Kan. 663, 666, 229 Pac. 757; *State, ex rel., v. Myers,* 152 Kan. 52, 55, 102 P. 2d 1028; *Engel v. Davenport,* 271 U. S. 33, 70 L. ed. 813, 46 S. Ct. 410.) The purpose of requiring liability insurance under each of these statutes is the same, being that of adequate protection to members of the public from negligent conduct of the motor-vehicle operator, not simply protection to the negligent operator against judgments rendered against him, and what the policy must assure is recoverable compensation to a member of the public for injury to person and loss of or injury to property. The insurance policy required under both acts is a liability insurance policy which shall bind the insurer to pay damages for injury to person and loss of or damage to property, resulting from negligent operation by the motor carrier. (*Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918, and opinion on rehearing 143 Kan. 771, 57 P. 2d 16.) It is fundamental that where a statute is designed to protect the public, the language must be construed in the light of the legislative intent and purpose and is entitled to a broad interpretation

so that its public purpose may be fully carried out. (*Marriott v. National Mut. Cas. Co.*, 195 F. 2d 462 [10th Circuit].)

The defendant insurance carrier's liability is statutory and the statute is part of the policy. (*Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P. 2d 508; *Cuddy v. Tyrrell*, 171 Kan. 232, 237, 232 P. 2d 607.)

Plaintiff's petition, as amended, alleged defendant Killion was operating his truck under the provisions of the aforementioned statute, and that the defendant's negligence was the proximate cause of the accident and resulting death. It further alleged the insurance carrier had in force a liability policy as provided by the statute. If the death was due to defendant Killion's negligent operation of the truck, the insurance carrier was obligated to pay compensation for the loss sustained. The petition, as amended, stated a cause of action against the defendant insurance carrier, and the demurrer was properly overruled.

Other points discussed, some of which were defensive matters, have not been overlooked, and need not be treated here.

The judgment is therefore affirmed.

HARVEY, C. J.: I dissent from paragraph 1 of the syllabus and all parts of the opinion based thereon.