Nos. 70,586; 70,587; 70,588

STATE OF KANSAS, *Appellant,* v. SANDRA K. MOUNTJOY a/k/a MORNINGSTAR, DONNA GRIFFITH, and CAROLYN R. ZAK, *Appellees.*

(891 P.2d 376)

Opinion filed March 10, 1995.

*Stephen M. Howe,* assistant district attorney, argued the cause, and *Christina M. Dunn,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellant.

*James R. Hobbs,* of Wyrsch Atwell Mirakian Lee & Hobbs, P.C., of Kansas City, Missouri, argued the cause, and *Marilyn B. Keller,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Defendants were charged with practicing the healing arts without a license under K.S.A. 65-2803, a class B misdemeanor. Following a jury trial, all three defendants were found not guilty. The State, pursuant to K.S.A. 1994 Supp. 22-3602(b)(3), appeals on a question reserved by the prosecution and questions whether the trial court erred by instructing the jury that criminal intent was a required element of the crime of practicing the healing arts without a license.

The facts are not disputed nor an issue in this case. Defendants Sandra Mountjoy a/k/a Morningstar, Donna Griffith, and Carolyn Zak were midwives involved in the breech delivery of a stillborn baby in January 1993 at a home in Edgerton, Kansas. Before the delivery of the baby, defendant Morningstar had entered into a written agreement to perform midwifery services for a sum of money.

Prior to closing arguments the trial judge proposed to instruct the jury:

"In order for the defendant to be guilty of the crime charged, the State must prove that her conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent or lack of intent is to be determined or inferred from all of the evidence in the case."

The State objected to the instruction, arguing that a violation of K.S.A. 65-2803 did not require proof of intent. Counsel for the State informed the judge that it wanted to "reserve that question."

Based on the same reasoning, the State objected to three other instructions. It objected to the instruction requiring proof that the defendants "willfully" engaged in the practice of the healing arts and defining "willfully" as "an act done voluntarily and intentionally with the specific intent to do something the law forbids, and not by mistake or accident." The prosecution also objected to a third instruction which required the State to prove that the defendants were not acting in response to an emergency and a fourth instruction stating that the jury should consider the defendants' claims that they reasonably believed that their conduct did not constitute an offense. The prosecution did not, how-

ever, ask to reserve these questions for appeal at the time it objected.

## Jurisdiction

An appellate court has only such jurisdiction as is provided by law. *State v. Moses*, 227 Kan. 400, Syl. ¶ 7, 607 P.2d 477 (1980). An appeal to this court may be taken by the prosecution as a matter of right after a final judgment in the district court in four situations: (1) from an order dismissing a complaint, information, or indictment; (2) from an order of the district court arresting judgment; (3) upon a question reserved by the prosecution; and (4) upon an order granting a new trial in any case involving a class A or B felony. K.S.A. 1994 Supp. 22-3602(b). See *State v. Puckett*, 227 Kan. 911, Syl. ¶ 1, 610 P.2d 637 (1980).

The purpose of permitting the State to appeal a question reserved is to allow prosecution to obtain review of an adverse legal ruling on an issue of statewide interest important to the correct and uniform administration of the criminal law which otherwise would not be subject to appellate review. *State v. Ruff*, 252 Kan. 625, 629, 847 P.2d 1258 (1993). No formal procedural steps are required by K.S.A. 1994 Supp. 22-3602(b) to appeal on a question reserved. All that is necessary for the State to do to reserve a question for presentation on appeal to the Supreme Court is to make proper objections or exceptions at the time the order complained of is made or the action objected to is taken, laying the same foundation for appeal that a defendant is required to lay. *City of Overland Park v. Cunningham*, 253 Kan. 765, 766, 861 P.2d 1316 (1993).

The State's notice of appeal provides: "Notice is hereby given that the State of Kansas, plaintiff, appeals from a question reserved on October 4, 1993, through October 8, 1993, to the Supreme Court of the State of Kansas, pursuant to K.S.A. 22-3602(b)(3)."

The docketing statement filed by the State expanded its original question reserved to four questions: (1) What is the proper scope of criminal liability under K.S.A. 65-2803 and what are the proper instructions that should be given? (2) Did the legislature intend

this statute to be a strict liability, general intent, or specific intent crime? (3) Were the trial court instructions on the emergency and mistake of law defenses correct? and (4) Should the trial court have instructed on whether ignorance of the statute is a defense?

Counsel for Mountjoy filed an answer to the State's docketing statement proposing that the question reserved by the prosecution be further expanded: (1) Is lay midwifery illegal under K.S.A. 65-2803? (2) Because "disease" is not defined in the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq.*, must the person charged have the specific intent to violate the Act? (3) Did the court properly instruct the jury with regard to the emergency defense where the defendant is clearly licensed as a health care provider as defined in K.S.A. 65-2891? and (4) Did the court properly refuse to instruct the jury with regard to ignorance of the law, specifically where the term 'disease' is not defined by statute?

To support their claim that the question reserved by the prosecution should be expanded, defendants' counsel argues that the Kansas Healing Arts Act provides insufficient notice that the practice of midwifery is illegal, contrasting K.S.A. 65-2803 with Missouri statutes which expressly proscribe the practice of midwifery, and asserts that the statute is unconstitutionally vague. Defendants' counsel further suggests that this court should determine whether the trial court properly instructed the jury because this case is one of first impression.

Except as otherwise provided, an appeal may be taken by a defendant as a matter of right from any judgment against the defendant. K.S.A. 1994 Supp. 22-3602(a). There is no statutory procedure for a defendant to appeal a question of law after an acquittal of the crime charged. When the prosecution appeals on a question reserved, the defendant has no statutory right to expand the question reserved by the prosecution. We have no statutory authority under a question reserved by the prosecution to answer the defendants' questions regarding whether lay midwifery is illegal under K.S.A. 65-2803 and whether the court properly instructed the jury.

To be considered on appeal, questions reserved by the prosecution must be issues of statewide interest important to the cor-

rect and uniform administration of criminal law. Questions reserved by the State in a criminal prosecution will not be entertained on appeal merely to determine whether error has been committed by the trial court in its rulings adverse to the State. *State v. Adee,* 241 Kan. 825, 826, 740 P.2d 611 (1987); *State v. Willcox,* 240 Kan. 310, Syl. ¶ 1, 729 P.2d 451 (1986); *State v. Holland,* 236 Kan. 840, Syl. ¶ 1, 696 P.2d 401 (1985); *State v. Glaze,* 200 Kan. 324, Syl. ¶ 1, 436 P.2d 377 (1968). We have uniformly declined to entertain questions reserved, the resolution of which would not provide helpful precedent. *State v. Hudon,* 243 Kan. 725, 726, 763 P.2d 611 (1988); *State v. Holland,* 236 Kan. at 841.

The questions of whether the court improperly instructed the jury as to the affirmative defenses of ignorance or mistake of law and emergency action are not questions of statewide interest to which answers are vital to a correct and uniform administration of justice. The only question of statewide importance for future cases raised by the prosecution is whether the State must prove that the accused had the general intent to violate K.S.A. 65-2803.

### Due Process Rights

Defendants assert that in determining the question reserved by the prosecution this court must consider the defendants' due process right to a fair trial. Defendants argue that their due process right to a fair trial is protected only if K.S.A. 65-2803 is interpreted to include an element of criminal intent. Without citing any authority, defendants simply state: "The due process and fair trial clause of both the Kansas Constitution and the United States Constitution require that a defendant be placed on notice that her conduct is, in fact, illegal," and "[t]he elimination of the element of criminal intent would be violative of the defendants' rights guaranteed by the due process clause."

The State points out that in *Holdridge v. United States,* 282 F.2d 302, 310 (8th Cir. 1960), the Eighth Circuit noted that the United States Supreme Court had recognized that the elimination of criminal intent from an offense by the legislature is not necessarily violative of the due process clause. In *Holdridge,* the de-

fendant was prosecuted for re-entry onto a military reservation in violation of 18 U.S.C. § 1382 (1988) after having been removed therefrom and ordered not to reenter. The first paragraph of that statute requires proof of bad motive or criminal intent in proving an initial trespass under the statute. However, a repeated trespass or a reentry, tied in with prior physical removal or a specific command not to reenter, requires no additional showing of criminal intent. The court noted that this interpretation provided protection to the innocent trespasser. 282 F.2d at 309. The *Holdridge* court noted that the defendant had been given notice of the illegality of his conduct when he was removed from the premises and told not to return. The court found that under such circumstances the defendant's rights to due process were not violated by the absence of criminal intent to do the act.

To determine the question reserved we must analyze the legislature's intent when it enacted the Kansas Healing Arts Act.

### Is Intent a Required Element of K.S.A. 65-2803?

The practice of healing arts includes any system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, or injury, and includes specifically but not by way of limitation the practice of medicine and surgery; the practice of osteopathic medicine and surgery; and the practice of chiropractic. K.S.A. 65-2802(a).

It is unlawful for any person who is not licensed under the Kansas Healing Arts Act or whose license has been revoked or suspended to engage in the practice of the healing arts as defined in the Kansas Healing Arts Act. K.S.A. 65-2803(a). That section does not apply to any health care provider who in good faith renders emergency care or assistance at the scene of an emergency or accident as authorized by K.S.A. 65-2891 and amendments thereto. K.S.A. 65-2803(c). A violation of this section is a class B misdemeanor.

Article 32 of the Kansas Criminal Code defines the principles of criminal liability for offenses committed within this state. K.S.A. 1994 Supp. 21-3201 states that except as otherwise pro-

vided, criminal intent is an essential element of every crime defined by the criminal code. Criminal intent may be established by proof that the conduct of the accused person was intentional or reckless. Proof of intentional conduct is required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a reckless manner. Intentional conduct is defined as conduct that is purposeful and willful and not accidental. As used in the criminal code, the terms "knowing," "willful," "purposeful," and "on purpose" are included within the term "intentional." K.S.A. 1994 Supp. 21-3201(b). Simply stated, criminal intent is the intent to do what the law prohibits. If proof of criminal intent is required, it is not necessary for the State to prove that the accused intended the precise harm or the result that occurred.

In addition to general criminal intent, some statutes also require proof of a specific intent. Under those criminal statutes, the intent to accomplish the precise act or a specific element of the crime which the law prohibits is necessary. One example is the crime of theft, K.S.A. 1994 Supp. 21-3701. The thief must not only have the general intent to take the property of another but must take the property with the specific intent to deprive the owner permanently of the possession, use, or benefit of the property.

A person may be held guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. K.S.A. 21-3204. The notes of the Judicial Council accompanying K.S.A. 21-3204 contain an excerpt from the case of *Morissette v. United States*, 342 U.S. 246, 252-56, 96 L. Ed. 288, 72 S. Ct. 240 (1952), in which the Court discussed an "accelerating tendency" to call into existence certain crimes against the public welfare which disregard any element of intent.

The State asserts that a person may be held guilty of practicing the healing arts without a license under K.S.A. 65-2803 without having criminal intent because: (1) the offense is a misdemeanor with minimal penalty; (2) there is no statutory language requiring

proof of criminal intent; and (3) the broad legislative purpose of the Kansas Healing Arts Act to protect the public welfare indicates the legislature intended to impose absolute liability. The defendants argue that the exceptions to the requirement of criminal intent stated in K.S.A. 21-3204 do not apply. As authority for their assertion the defendants point out that the United States Supreme Court in *Morissette* declined to impose strict liability where criminal statutes have omitted the element of criminal intent.

In *Morissette*, the defendant was convicted of "unlawfully, willfully, and knowingly" stealing government property. 342 U.S. at 248. The applicable federal statute did not expressly require an element of criminal intent. The defendant's defense was that he believed the property to be abandoned and had taken it with no wrongful or criminal intent. The trial court ruled that the statute provided strict liability and instructed the jury that lack of criminal intent was not a defense to the charge of theft of government property. The Sixth Circuit Court of Appeals affirmed.

The United States Supreme Court reversed, holding that the mere omission by Congress of criminal intent in the statute would not be construed as eliminating that element from the offense charged. 342 U.S. at 262-63. It noted that where intent of the accused is an element of the crime charged, its existence is a question of fact which must be submitted to the jury. It concluded that where intent is an element of the crime, the trial court cannot instruct the jury that the law raises a presumption of intent from the act.

For additional authority the defendants refer to *United States v. United States Gypsum Co.*, 438 U.S. 422, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978); *United States v. Bailey*, 444 U.S. 394, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980); and *Ratzlaf v. United States*, 510 U.S. 135, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994), in which the United States Supreme Court reached the same conclusion as in *Morissette*. *Gypsum* involved the question of whether a defendant's state of mind or intent was an element of a federal criminal antitrust offense under the Sherman Act. The Act made no mention of intent or state of mind as an element of the offense.

The Supreme Court, citing *Morissette*, held that "a defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent from proof of an effect on prices." 438 U.S. at 435. In reaching this conclusion, the Court reaffirmed the "familiar proposition that '[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.'" 438 U.S. at 436 (quoting *Dennis v. United States*, 341 U.S. 494, 500, 97 L. Ed. 1137, 71 S. Ct. 857 [1951]). The Court stated that while strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements, the limited circumstances in which Congress has created and the Court has recognized such offenses attest to their generally unfavored status. It concluded that more than the omission of the appropriate phrase from the statutory definition was necessary to justify dispensing with an intent requirement. 438 U.S. at 437-38.

In *Bailey*, 444 U.S. 394, the Court addressed the level of mental intent, or *mens rea*, required to sustain a conviction under 18 U.S.C. § 751(a) (1988), governing escape from federal custody. Neither the language of the statute nor the legislative history mentioned the *mens rea* required for conviction. 444 U.S. at 397, 406. Noting that the common-law distinction between "general intent" and "specific intent" had been the source of much confusion, the Court looked to the American Law Institute's Model Penal Code for assistance in defining workable principles of criminal culpability. The Court recognized that the Model Penal Code replaced the term "intent" with a hierarchy of culpable states of mind, identified in descending order of culpability as purpose, knowledge, recklessness, and negligence. 444 U.S. at 403-04. The Court observed that the cases have generally held that, except in narrow classes of offenses, proof that the defendant acted knowingly is sufficient to support a conviction. It held that the prosecution fulfills its burden under 18 U.S.C. § 751(a) if it demonstrates that an escapee knew his or her actions would result in leaving physical confinement without permission. 444 U.S. at 408.

In *Ratzlaf,* 510 U.S. 135, the primary issue was whether the defendant could be convicted of structuring financial transactions to avoid currency reporting requirements without any proof that he knew it was illegal to conduct a financial transaction in such a manner. The Supreme Court held that the trial judge improperly instructed the jury that the prosecution did not have to prove the defendant knew the structuring was unlawful. 126 L. Ed. 2d at 627. The court held that in order to prove "willful" conduct, "the jury had to find [the defendant] knew the structuring in which he engaged was illegal." 126 L. Ed. 2d at 627.

For additional authority the defendant cites *Staples v. United States,* 511 U.S. ___, 128 L. Ed. 2d 608, 114 S. Ct. 1793 (1994) (government should have been required to prove beyond reasonable doubt that defendant knew weapon he possessed had characteristics that brought it within statutory definition of machine gun); *Posters 'N' Things v. United States,* 511 U.S. ___, 128 L. Ed. 2d 539, 114 S. Ct. 1747 (1994) (federal statute proscribing use of interstate conveyance as part of scheme to sell drug paraphernalia requires proof that defendant knowingly made use of interstate conveyance to sell items that he knew were likely to be used with illegal drugs, but does not require proof of specific knowledge that items were drug paraphernalia as defined by statute); *United States v. Otiaba,* 862 F. Supp. 251 (D.N.D. 1994) (knowledge of illegality is required to establish that defendant knowingly delivered any firearm or ammunition without written notice); *United States v. Obiechie,* 38 F.3d 309 (7th Cir. 1994) (penalty statute which prescribes penalty for willful violation of licensing statute prohibiting anyone except licensed importer, manufacturer, or dealer from dealing in firearms requires that defendant have knowledge of law for conviction).

Citing *State v. Thompson,* 237 Kan. 562, 701 P.2d 694 (1985), defendants argue that the fact the crime charged is a misdemeanor does not mean criminal intent is not required. In *Thompson,* the defendant had been convicted of harassment by telephone in violation of K.S.A. 21-4113(1)(a). The defendant claimed that the statute was unconstitutionally overbroad because it did not require a criminal intent to harass. The *Thompson* court dis-

agreed, stating that the existence of a criminal intent is essential unless it clearly appears that the legislature intended to make the act criminal without regard to the intent with which the act was done. The *Thompson* court concluded that when enacting K.S.A. 21-3201 the legislature made criminal intent an essential element of every crime defined by the Kansas Criminal Code except specifically stated exceptions which did not apply to harassment by telephone. 237 Kan. at 567.

Under the Kansas Healing Arts Act it is unlawful for any person to practice the healing arts without a license. The statute which makes it illegal to practice the healing arts without a license does not require that the person convicted have the intent to practice medicine. See K.S.A. 65-2803. The State asserts that the phrase "[i]t shall be unlawful" and the absence of statutory language indicating intent is required indicate the legislative intent to impose absolute liability. The State further contends that the Kansas Healing Arts Act demonstrates the legislature's concern for the public welfare of the citizens of Kansas. It argues that the unauthorized practice of the healing arts is an offense for which the legislature intended to impose absolute liability under the public welfare doctrine.

The right to practice the healing arts is a privilege granted by legislative authority and not a natural right of individuals. The legislature deemed it necessary as a matter of policy in the interests of public health, safety, and welfare, to enact laws covering the granting of that privilege and its subsequent regulation to protect the public against unprofessional, improper, unauthorized, and unqualified practice of the healing arts. K.S.A. 65-2801.

The State cites several cases to support its assertion that K.S.A. 65-2803 was enacted to protect the public welfare and does not require proof of criminal intent to show a violation of the Act. In *Johnson v. Killion*, 178 Kan. 154, 283 P.2d 433 (1955), the court interpreted a statute which required applicants for liquid-fuels motor carrier licenses to obtain liability insurance for injury or damage resulting from the negligent operation of such carrier. The *Johnson* court noted that the purpose of the statute was to protect the public from negligent conduct of a motor vehicle op-

erator. The court observed that it was fundamental that where a statute is designed to protect the public, the language must be construed in the light of the legislative intent and purpose and is entitled to a broad interpretation so that its public purpose may be fully carried out. 178 Kan. at 158-59.

In *State, ex rel., v. Fadely*, 180 Kan. 652, 665, 308 P.2d 537 (1957), the court addressed the constitutionality of acts of the legislature establishing a state emergency fund, making appropriations thereto, and creating a state finance council. The court discussed whether the legislation contained sufficient standards for the statutes to operate in the manner intended. The court addressed whether the "preservation of the public health" was susceptible to an accurate definition. 180 Kan. at 665. As part of its discussion, the court observed that among all the objects sought to be secured by government, none is more important than the preservation of the public health, and an imperative obligation rests upon the State through its proper instrumentalities or agencies to take all necessary steps to accomplish that objective. It stated that statutes enacted to protect public health should be liberally construed and concluded that power could be conferred on administrative boards to carry out such purpose. 180 Kan. at 665.

A third case cited by the State is *State, ex rel., v. Fairmont Foods Co.*, 196 Kan. 73, 410 P.2d 308 (1966). In that case, the court examined whether the Dairy Practices Act is prohibiting premium gifts to consumers violated due process by failing to sufficiently define the acts forbidden and by not requiring a criminal intent to violate the Act. 196 Kan. at 77. The *Fairmont* court acknowledged that the common-law rule requiring the element of scienter to hold a person criminally responsible for his or her conduct contains a "well-recognized exception" for public welfare offenses. 196 Kan. at 81. Citing the statement of the public welfare doctrine in *United States v. Balint*, 258 U.S. 250, 251-52, 66 L. Ed. 604, 42 S. Ct. 301 (1922), the *Fairmont* court noted that "the [public welfare] doctrine has been recognized in this jurisdiction many times. (*State v. Merrifield*, 180 Kan. 267, 303 P.2d 155; *State v. Beam*, 175 Kan. 814, 267 P.2d 509; *State v. Brown*,

173 Kan. 166, 244 P.2d 1190; *State v. Avery*, 111 Kan. 588, 207 Pac. 838; and *City of Hays v. Schueler*, 107 Kan. 635, 193 Pac. 311.)" 196 Kan. at 82. After noting that the dairy industry was affected with a public purpose and constitutionally subject to regulation after *Nebbia v. New York*, 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505 (1934), the *Fairmont* court held that the absence of a required criminal intent in doing the acts proscribed by the Dairy Practices Act was not fatal for lack of due process. 196 Kan. at 82.

Other Kansas cases cited by the State where the public welfare doctrine has been followed are: *State v. Logan*, 198 Kan. 211, 424 P.2d 565 (1967) (violation of the Kansas Liquor Control Act); *State v. Merrifield*, 180 Kan. 267, 303 P.2d 155 (1956) (driving while license suspended). See also *State v. Robinson*, 239 Kan. 269, 718 P.2d 1313 (1986) (furnishing alcoholic liquor to a minor); *State v. Riedl*, 15 Kan. App. 2d 326, 807 P.2d 697 (1991) (various traffic violations); *City of Wichita v. Hull*, 11 Kan. App. 2d 441, 724 P.2d 699 (1986) (city DUI ordinance); *City of Overland Park v. Estell*, 8 Kan. App. 2d 182, 653 P.2d 819 (1982), *rev. denied* 232 Kan. 875 (1983) (city traffic ordinance violation); *State v. Baker*, 1 Kan. App. 2d 568, 571 P.2d 65 (1977) (speeding).

For additional support of the public welfare doctrine's application from other jurisdictions, the State cites *Khan v. Medical Board*, 12 Cal. App. 4th 1834, 16 Cal. Rptr. 2d 385 (1993) (violation of statute prohibiting employment of any unlicensed person to engage in the practice of medicine; where manifest object of statute is to protect public from treatment by unlicensed persons, criminal intent or guilty knowledge not an element); *People v. Telfer*, 233 Cal. App. 3d 1194, 284 Cal. Rptr. 913 (1991) (many public health statutes do not require proof of intent); and *People v. Atkins*, 76 Misc. 2d 661, 351 N.Y.S.2d 859 (1974) (elimination of intent valid and proper when applied to health and welfare laws).

Although both parties observe that K.S.A. 1994 Supp. 21-3201 indicates that criminal intent is an essential element of every crime defined in the Kansas Criminal Code, neither party recognizes that the offense charged is not a crime set out in the

Kansas Criminal Code. Both parties note that K.S.A. 21-3204 provides that a person can be convicted of an offense without having criminal intent if (1) the crime is a misdemeanor and (2) the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. The State points out that under K.S.A. 65-2803(d), practicing the healing arts without a license is made a class B misdemeanor punishable by a fine of up to $1,000 and a prison term of up to six months. K.S.A. 1994 Supp. 21-4502(1)(b), (2). It argues that there is no statutory provision that prohibits the imposition of absolute liability for a violation of the Act.

Among all the objects sought to be secured by government, none is more important than the preservation of the public health. *State, ex rel., v. Fadely*, 180 Kan. at 665. It is fundamental that where a statute is designed to protect the public, the language of that statute must be construed in the light of the legislative intent and purpose and is entitled to a broad interpretation so that its public purpose may be fully carried out. The common-law rule which requires the element of criminal intent to hold a person criminally responsible for his or her conduct contains a well-recognized exception for public welfare offenses.

The purpose of K.S.A. 65-2803 is to protect the public from the unauthorized practice of the healing arts. The unauthorized practice of the healing arts is an offense which, under the public welfare doctrine, does not require the element of criminal intent.

Appeal sustained.