(243 P.3d 697)
No. 102,527

STATE OF KANSAS, *Appellee*, v. JESSICA D. CUMMINGS,
*Appellant*.

Opinion filed December 10, 2010.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before STANDRIDGE, P.J., MARQUARDT and LEBEN, JJ.

STANDRIDGE, J.: Jessica D. Cummings appeals from her conviction for involuntary manslaughter. Specifically, Cummings argues that the underlying crime of endangering a child requires specific intent, that the district court erred in denying her request to instruct the jury on general intent, and that the district court erred in failing to instruct the jury on the meaning of reasonable probability. For the reasons stated below, we affirm.

## FACTS

Cummings provided daycare for children in her home. On March 25, 2008, Cummings was caring for 13-month-old K.H. Cummings gave K.H. a bottle at 9 a.m. and put her down to nap in a playpen located in Cummings' bedroom. Cummings' sister, Tiffanie Williams, was sleeping in the bedroom at the time. Because K.H. was making noise as she drank her bottle, Williams

moved K.H. and the playpen into an adjacent bedroom where another child was sleeping.

Cummings moved K.H. again at around 10 a.m. so that K.H. would not disturb the sleeping child. Cummings put K.H. in a car seat, fastened the top buckle, and placed K.H. in a laundry room/restroom area of the house. Cummings did not check on K.H. again until 12:30 p.m., at which time Cummings discovered that K.H. had died due to strangulation.

The State charged Cummings with involuntary manslaughter based on the underlying crime of child endangerment; in other words, that she unintentionally had killed K.H. by committing the crime of endangering a child. At her trial, the jury found Cummings guilty. The district court sentenced Cummings to 32 months in prison.

## ANALYSIS

In this direct appeal of her conviction, Cummings alleges the district court erred (1) by failing to give the jury a specific intent instruction with regard to the underlying crime of endangering a child; (2) by denying her request to instruct the jury on general intent with regard to the underlying crime of endangering a child; and (3) by failing to instruct the jury on the meaning of reasonable probability, a term used in the jury instruction in child endangerment. We address each claim of error in turn.

### Specific Intent

In this first point of error, Cummings reasons as follows: (1) endangering a child in violation of K.S.A. 21-3608(a) requires the State to establish that a defendant specifically intended to injure or harm a child; (2) the instruction on child endangerment in this case did not require the jury to find Cummings specifically intended to injure or harm K.H.; therefore, (3) the district court erred in failing to provide the jury with an instruction that complied with the applicable law.

We disagree with the conclusion reached by Cummings because it is based on a faulty premise. More specifically, we find endangering a child in violation of K.S.A. 21-3608(a) is not a specific

intent crime as Cummings asserts, but instead is a general intent crime.

The crime of endangering a child is defined as "intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered." K.S.A. 21-3608(a).

Like any other crime, the State is required to establish general criminal intent in order to prove a defendant violated K.S.A. 21-3608(a). See K.S.A. 21-3201(a) ("Except as otherwise provided, a criminal intent is an essential element of every crime defined by this code."). General criminal intent may be established by proof that the conduct of the accused person was intentional. K.S.A. 21-3201(a). "Intentional conduct is conduct that is purposeful and willful and not accidental." See K.S.A. 21-3201(b).

To prove general intent, the State is not required to establish the defendant intended the precise harm or the result that occurred. See *State v. Mountjoy*, 257 Kan. 163, 170, 891 P.2d 376 (1995). Further, the State is "not obligated to prove an intent to violate a particular statute but rather the intent to do the criminal act which violated the statute." *State v. Kirtdoll*, 206 Kan. 208, 209, 478 P.2d 188 (1970). In other words, " 'all that is required is proof that the person acted intentionally in the sense that he [or she] was aware of what he [or she] was doing.' " *State v. Hodge*, 204 Kan. 98, 108, 460 P.2d 596 (1969).

Unlike the obligation to prove general criminal intent as an essential element of every crime defined in the Kansas Criminal Code, the State is only required to prove specific criminal intent when the statute defining the crime requires an additional element of intent over and above the requisite general criminal intent. *State v. Eichman*, 26 Kan. App. 2d 527, 530, 989 P.2d 795, *rev. denied* 268 Kan. 890 (1999).

In this case, the State alleged Cummings placed K.H. in a situation where K.H.'s life, body, or health may have been injured or endangered. Given K.H. died as a result of her being placed in a car seat that only had the top buckle fastened and being left unattended for over 2 hours, we necessarily conclude this situation is one where K.H.'s life, body, or health may have been injured or

endangered. In order to establish the general criminal intent necessary to convict Cummings of violating K.S.A. 21-3608, then, the State was required to prove Cummings purposely, willfully, and nonaccidentally placed K.H. in a car seat that only had the top buckle fastened and left K.H. unattended for over 2 hours.

Notably, Cummings does not dispute she purposely, willfully, and nonaccidentally placed K.H. in a car seat, that she purposely, willfully, and nonaccidentally fastened only the top buckle, that she purposely, willfully, and nonaccidentally left K.H. unattended in that situation for over 2 hours, and that K.H. died as a result of her purposeful, willful, and nonaccidental actions in this regard. Instead, Cummings argues that endangering a child in violation of K.S.A. 21-3608(a) is a specific intent crime, that this specific intent crime required the State to establish she knew K.H. would be harmed or injured as a result of her actions, and that the State failed to establish she possessed such knowledge.

Contrary to Cummings' argument, K.S.A. 21-3608 does not require proof of any additional element of intent over and above the requisite general criminal intent: that Cummings purposely, willfully, and nonaccidentally placed K.H. in a situation where K.H.'s life, body, or health may have been injured or endangered. The statute contains no language requiring Cummings to have known that harm or injury to K.H. could result as a consequence of her actions. In fact, the statute contains no language requiring K.H. to have been injured or harmed in any way. Because K.S.A. 21-3608 does not require proof of any additional element of intent over and above the requisite general criminal intent, we conclude endangering a child as defined by that statute is not a specific intent crime. As such, we find no error by the district court in declining to instruct the jury on specific intent with regard to the underlying crime of endangering a child.

*General Intent*

For purposes of her next argument, Cummings concedes endangering a child in violation of K.S.A. 21-3608(a) is a general intent crime. To that end, Cummings argues the district court

erred in denying her request to provide the jury with an instruction relating to general intent.

"'When considering the refusal of the trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction.' [Citation omitted.]" *State v. Hayden*, 281 Kan. 112, 131-32, 130 P.3d 24 (2006).

The pattern instruction relating to general intent that was requested by Cummings states as follows:

"In order for the defendant to be guilty of the crime charged, the State must prove that (his)(her) conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent or lack of intent is to be determined or inferred from all of the evidence in the case." PIK Crim. 3d 54.01-A.

The notes to the instruction suggest it is appropriate to give this instruction only if: (1) the crime requires a general criminal intent, and (2) the state of mind of the defendant is a substantial issue. PIK Crim. 3d 54.01-A, Notes on Use. To that end, Cummings contends the first requirement for using the instruction is satisfied because she already has conceded (for purposes of this argument) that endangering a child in violation of K.S.A. 21-3608(a) is a general intent crime. Cummings contends the second requirement for using the instruction is also satisfied because her state of mind was a substantial issue in this case. In support of this contention, Cummings argues a substantial issue existed with regard to whether she knew that harm or injury to K.H. could result as a consequence of her actions.

We are not persuaded by Cummings' argument. As noted above, the State was not required to establish that Cummings knew harm or injury to K.H. could result from her actions in order to prove Cummings was guilty of endangering a child in violation of K.S.A. 21-3608(a). In other words, there was no need for the jury to make a determination regarding Cummings' state of mind with regard to the resulting harm or injury ultimately experienced by K.H. in order to find Cummings guilty of endangering a child in violation of K.S.A. 21-3608(a). Because her state of mind with regard to resulting injury or harm was not an issue, let alone a substantial issue,

for determination at trial, the second requirement for giving the instruction was not satisfied, and the district court did not err in denying Cummings' request to provide the jury with PIK Crim. 3d 54.01-A.

*Reasonable Probability*

In her final point of error, Cummings asserts the district court erred by failing to define the phrase "reasonable probability" in the child endangerment instruction as meaning "something more than a faint or remote possibility" and "a likelihood." In considering Cummings' argument, we note her claim is limited to the court's failure to define "reasonable probability" as "something more than a faint or remote possibility" and "a likelihood"; she does not assert it was necessary to define "reasonable probability" in terms of a statistical percentage or a measure of balance capable of being gauged.

Because Cummings neither suggested a different instruction than the one used by the court nor objected to its use, a clearly erroneous standard applies. See K.S.A. 22-3414(3); *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citation omitted.]" *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

Before addressing the merits of the issue presented, we find it helpful to briefly review the language of K.S.A. 21-3608(a) and Kansas cases that have interpreted the relevant language in that statute.

The crime of endangering a child is statutorily defined as "intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health *may* be injured or endangered." (Emphasis added.) K.S.A. 21-3608(a). This statute was enacted in 1969, and its current form dates back to 1993. See L. 1992, ch. 298, sec. 36; L. 1993, ch. 291, sec. 59.

In *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981), the Kansas Supreme Court interpreted the language and purpose of K.S.A.

21-3608(a) (which was at that time found in K.S.A. 21-3608[1][b] [Ensley 1981]) and concluded the word "may" as used in the statute was not unconstitutionally vague. In so concluding, the court explained that in the context of the statute, the word "may" "means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." *Fisher*, 230 Kan. at 195.

Almost two decades after the court issued its opinion in *Fisher*, Michael Sharp was convicted by a Douglas County, Kansas, jury of endangering a child in violation of K.S.A. 21-3608(a). See *State v. Sharp*, 28 Kan. App. 2d 128, 13 P.3d 29 (2000). The instruction upon which the jury convicted Sharp of endangering a child mirrored the corresponding pattern instruction that was in place at the time. Specifically, the instruction stated, in relevant part, as follows:

"The defendant is charged with the crime of endangering a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally and unreasonably caused or permitted [a child] to be placed in a situation in which [the child's] life, body or health *might* be injured or endangered." (Emphasis added.) PIK Crim. 3d 58.10 (1993).

On appeal from his conviction, Sharp argued that by substituting the word "might" in the instruction for the word "may" as used to define the crime in K.S.A. 21-3608(a), the jury was given the improper legal standard to consider in determining whether the crime had been committed. A panel of this court agreed. The *Sharp* court found it significant that in *Fisher* the Kansas Supreme Court rejected the ordinary or normal meaning of the word "may" in the context of K.S.A. 21-3608(a) and specifically defined it in that context as "reasonable probability." *Sharp*, 28 Kan. App. 2d at 131-32 (citing *Fisher*, 230 Kan. at 195). Based on the definition set forth in *Fisher*, the *Sharp* court concluded that the "may be injured" language in K.S.A. 21-3608(a) was to be construed after *Fisher* as a reasonable probability that the child would be injured.

In light of this conclusion, the *Sharp* court found the instruction upon which the jury convicted Sharp set forth an improper legal

standard to determine whether Sharp had committed the crime of endangering a child. Specifically, the instruction only required the State to prove that the child's life, body, or health *might* be injured or endangered, while our Supreme Court in *Fisher* previously had rejected the ordinary or normal meaning of the word "may" as used in the statute "in favor of a definition containing a legal standard: reasonable probability." 28 Kan. App. 2d at 135. The *Sharp* court ultimately held there was "a very real possibility, especially under the facts of this case, that the jury would have returned a different verdict had the term 'might' been properly defined as more than a faint or remote possibility, a reasonable probability, a likelihood that harm to the child will result or that the child will be placed in imminent peril." 28 Kan. App. 2d at 135.

In order to fix what the *Sharp* court had deemed to be an improper legal standard in the pattern instruction, the Advisory Committee on Criminal Jury Instructions to the Kansas Judicial Council amended PIK Crim. 3d 58.10 to replace the word "might" in the pattern instruction with the phrase "reasonable probability":

"The defendant is charged with the crime of endangering a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.  That the defendant intentionally and unreasonably caused or permitted [a child] to be placed in a situation in which there was *a reasonable probability* that [the child's] life, body or health would be injured or endangered." (Emphasis added.) PIK Crim. 3d 58.10 (2000 Supp.).

A few years after PIK Crim. 3d 58.10 was amended to comply with *Sharp*, the Kansas Supreme Court upheld a conviction for endangering a child in violation of K.S.A. 21-3608(a) in a case where the jury was given the post-*Sharp* version of PIK Crim. 3d 58.10. *State v. Daniels*, 278 Kan. 53, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004). In finding sufficient evidence to support the conviction, the *Daniels* court acknowledged the post-*Sharp* version of PIK Crim. 3d 58.10 was the proper legal standard to consider in determining whether a violation of K.S.A. 21-3608(a) had occurred:

"K.S.A. 21-3608 defines the crime of endangering a child as 'intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed

in a situation in which the child's life, body or health may be injured or endangered.' In *State v. Sharp*, 28 Kan. App. 2d 128, 135, 13 P.3d 29 (2000), the Court of Appeals concluded that there must be a reasonable probability that the harm will result or the child will be placed in imminent peril. The pattern instruction, PIK Crim. 3d 58.10, which was followed in this case, was modified to reflect this standard." *Daniels*, 278 Kan. at 72-73.

As in *Daniels*, it was the post-*Sharp* PIK Crim. 3d 58.10 instruction that was used in this case to convict Cummings of endangering a child in violation of K.S.A. 21-3608(a):

"The elements of endangering a child are as follows:
"1.    That the defendant intentionally and unreasonably caused or permitted [K.H.] to be placed in a situation in which there was a reasonable probability that [K.H.'s] life, body or health would be injured or endangered."

With regard to this instruction, Cummings argues there is a real possibility the jury would have rendered a different verdict if it had more "accurately and thoroughly" defined the phrase "reasonable probability" to mean "something more than a faint or remote possibility" and "a likelihood."

" 'The trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury or cause it to speculate, that additional terms should be defined. A term which is widely used and which is readily comprehensible need not have a defining instruction.' " *State v. Patton*, 33 Kan. App. 2d 391, 396, 102 P.3d 1195 (2004), *rev. denied* 279 Kan. 1009 (2005) (quoting *State v. Requena*, 30 Kan. App. 2d. 200, 206, 41 P.3d 862 [2001]).

As noted above, Cummings does not claim it was necessary to define "reasonable probability" in terms of a statistical percentage or a measure of balance capable of being gauged in order for the jury to readily comprehend the meaning of the phrase. Instead, Cummings limits her claim of error to the district court's failure to further define "reasonable probability" in the instruction as "something more than a faint or remote possibility" and "a likelihood."

There is no merit to Cummings' claim. First, we find "reasonable probability" to be a risk assessment readily comprehensible to a jury; in other words, a jury would not be misled or confused by the instruction. Second, we find it redundant to instruct a jury that "reasonable probability" means "more than a faint or remote pos-

sibility" and "a likelihood." Supplementing the instruction with redundant phrases and legalese necessarily works to impede, rather than assist, the jury in executing its duties. Third, our Supreme Court has acknowledged the post-*Sharp* version of PIK Crim. 3d 58.10 is the proper legal standard to consider in determining whether a violation of K.S.A. 21-3608(a) had occurred.

Affirmed.

\* \* \*

LEBEN, J., dissenting: Most of the time, the words we choose have some imprecision in conveying our intended meaning (assuming we've thought enough about the matter to have a clear intended meaning).

An oft-used example in law schools is a statute forbidding vehicles in a park. Certainly cars can't be driven there, but what about a golf cart? Or a Segway? It depends upon what vehicle means.

This sort of imprecision is especially important when we give juries the instructions they must follow. The instructions must be sufficiently precise that they accurately tell the jurors the key concepts that must guide their deliberations. Anything less can erode a defendant's right to be found guilty only when guilt of all elements of the offense has been proved beyond a reasonable doubt. In addition, an imprecise definition of an element of the offense could lead to convicting a defendant because the jury understood the definition to require *less* culpability than the law actually requires. If a defendant were convicted after such a misunderstanding, key principles of our criminal-justice system are undermined—including the principle that all of us should have fair notice of what's forbidden by our criminal laws.

This is such a case: the defendant may well have been convicted under a standard requiring less culpability than the law requires.

Let's start with a precise discussion about the required elements of child endangerment. Are we talking about merely being negligent? Negligence results in civil liability for damages and requires only a failure to do something that a reasonably prudent person would do. Or does criminal liability for child endangerment require something more?

The statute, K.S.A. 21-3608(a), requires a defendant to have intentionally and unreasonably put a child in a situation in which the child's life, body, or health *"may* be injured." (Emphasis added.) But a statute defining criminal conduct is unconstitutional if it is too vague. Our Supreme Court held in *State v. Fisher*, 230 Kan. 192, 195, 631 P.2d 239 (1981), that the term "may" in the child-endangerment statute means "something more than a faint or remote possibility; it means that there is *a reasonable probability, a likelihood that harm to the child will result."* (Emphasis added.) The court noted that "may" can have many different meanings and ultimately chose a relatively limited definition so that the statute would not be too vague. Our Supreme Court thus interpreted "may" in the child-endangerment statute to mean "a reasonable probability, a likelihood that harm to the child will result."

Its use of the term "likelihood" is significant. The *Fisher* court relied on a Colorado Supreme Court decision that had interpreted "may" to mean "reasonable probability" in a similar Colorado statute. 230 Kan. at 194-95 (citing *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 [1977]). But "reasonable probability" is itself ambiguous. For example, does something with a "reasonable probability" of occurring happen more—or less—frequently than something with just a "probability" of occurring? Thus, the Kansas Supreme Court combined the phrasing to add some additional precision: reasonable probability, a *likelihood that harm will result*.

Accordingly, in *State v. Sharp*, 28 Kan. App. 2d 128, 13 P.3d 29 (2000), our court reversed a child-endangerment conviction when the jury instruction simply substituted "might" for "may." The panel in *Sharp* concluded that there was a real possibility that the jury would not have convicted the defendant had it been told that the State must show not merely that harm to the child "might" result but instead had been told that conviction required that the defendant's acts caused "a reasonable probability, a likelihood that harm to the child will result." 28 Kan. App. 2d at 135.

So what does this phrase actually mean? One dictionary notes that "likely" can mean "[p]ossessing or displaying the qualities or characteristics that make something probable," but also that it can mean "[w]ithin the realm of credibility; plausible." American Her-

itage Dictionary 1014 (4th ed. 2006). Another dictionary says something is "likely" when it is "probable" or has "a better chance of existing or occurring than not." Webster's Third New International Dictionary 1310 (1993). "Probability" can be a neutral term: we can say either "the probability of success is zero" or "the probability of success is 100%." The American Heritage Dictionary's first definition of "probable" is "[l]ikely to happen or to be true," as in "War seemed probable in 1938," or "The home team, far ahead, is the probable winner." But the same dictionary also defines "probable" as "[l]ikely but uncertain; plausible." American Heritage Dictionary 1397.

There's quite a bit of play, then—or potential imprecision—in the meaning of "a reasonable probability, a likelihood." But we have at least four factors that lead me to conclude that the phrase means "more likely than not" when we interpret this criminal statute. First, when the Kansas Supreme Court took the definition of "a reasonable probability" from a Colorado case, it added "a likelihood" as a synonym for the meaning the court was identifying. *Fisher*, 230 Kan. at 195. Likely (or likelihood) and probable (or probability) are often defined with respect to each other, and each has an indeterminate meaning. But the combination of likely and probable suggests that we should be using ordinary, prototypical meanings, not alternate definitions. It would be odd for the court to have referenced less common alternative meanings for each of the two terms in defining this concept. The first definition for probable in the American Heritage Dictionary is "likely to happen," combined with two examples that demonstrated a high probability that the event would occur. When used together, the terms probability and likelihood suggest that the event must be more likely than not to occur. See *State v. Tice*, 686 N.W.2d 351, 353-55 (Minn. App. 2004) (interpreting child-endangerment statute that makes it a crime to place child "in a situation likely to substantially harm" that child to mean that the harm must be more likely than not to result from the act based on use of the term "likely"). Second, the limitation on the meaning of the statutory term "may" came in *Fisher* on a void-for-vagueness challenge. The key test in such cases is that the statute must give "adequate warning" as to

what conduct is illegal. *State v. Richardson*, 289 Kan. 118, 124, 209 P.3d 696 (2009). Choosing a nonprototypical meaning for these terms would be inconsistent with that goal. Third, the rule of lenity also calls for narrow interpretation of criminal statutes so that citizens have fair notice of the conduct that may subject them to imprisonment or other punishment. *State v. Boyer*, 289 Kan. 108, 113, 115, 209 P.3d 705 (2009); *State v. Reese*, 42 Kan. App. 2d 388, 390, 212 P.3d 260 (2009). The values that stand behind that rule would be undermined if we chose less common meanings that expanded potential liability. Last, the discussion in *Fisher* ends with "a likelihood that harm . . . *will* result." (Emphasis added.) 230 Kan. at 195. That too suggests that we are dealing with an event that more likely than not actually would occur due to the action taken.

In sum, the Kansas Supreme Court has interpreted the child-endangerment statute to require that the defendant's conduct cause "a reasonable probability, a likelihood that harm . . . will result." 230 Kan. at 195. The terms "a reasonable probability, a likelihood," and "will result" should be understood in this context to require that harm to the child was more likely to occur than not from the defendant's conduct.

But here is the critical question in this case: Would a jury have understood that the State had to prove that the situation in which the defendant placed the infant made it more likely than not that she would be injured? The judge's instruction merely told the jury that the defendant's conduct had to have "placed [the child] in a situation in which there was a reasonable probability that [the child's] life, body or health would be injured or endangered." That left the jury to guess about what "reasonable probability" meant. The jury could easily have understood the imprecision of that term to allow conviction even when the probability of harm was well less than even odds.

In some circumstances, a synonym for "probability" is "chance." Jurors could easily have understood that they could convict the defendant if there was a "reasonable chance" or a "decent chance" that harm would result from putting an infant in a car seat with only the top strap fastened. In calculating how to interpret the

single term "reasonable chance," the jurors would have applied a different standard than the one our Supreme Court supplied in *Fisher*.

Perhaps some would argue that I have read too much into the words our Supreme Court used in *Fisher*, but this was our Supreme Court's unanimous and authoritative interpretation of the statute. This statute, moreover, was twice reenacted with this same language after *Fisher* and before Cummings' acts led to this infant's death. See L. 1992, ch. 298, sec. 36; L. 1993, ch. 291, sec. 59. When the legislature reenacts a law after our Supreme Court has interpreted it, it has long been understood that the legislature implicitly accepts the court's construction of that statute. *Colver v. McInturff*, 112 Kan. 604, 608, 212 P. 908 (1923); see 2B Singer and Singer, Sutherland Statutes and Statutory Construction § 49.9 (7th ed. 2008). Moreover, as I have already explained, the natural reading of the phrases the court used in *Fisher* is that the probability of the harm occurring must be more likely than not. As the *Fisher* court said, the statute's purpose "is to protect children, and to prevent their being placed where it is reasonably certain that injury will result," a situation " 'in which injury appears likely and probable.' " 230 Kan. at 199.

Is this much ado about nothing? Would a better instruction have resulted in a different verdict? After all, because the defendant made no objection at trial to the jury instructions, we must affirm unless we are firmly convinced there is a real possibility that the jury would have rendered a different verdict had it received a proper instruction. See *State v. Colston*, 290 Kan. 952, 976, 235 P.3d 1234 (2010). Given the way this case was presented to the jury, I am firmly convinced that there is a real possibility of a different verdict here.

The prosecutor's closing argument essentially turned the question of *probability* into one of *foreseeability*:

"Was it a reasonable probability that that could happen? . . . . [R]ead the warning labels that are clearly displayed on that car seat. It is specific about the danger of strangulation. It is reasonably foreseeable[;] you could believe if they put a warning label on the seat that it could happen. Clearly, somebody foresaw that it could happen."

This is a tragic case. The jury found that the defendant's act of placing this 13-month-old girl into a car seat for a nap—rather than a crib—was unreasonable. But doing something unreasonable is only one element of this crime: the act must also be one that causes a reasonable probability, a likelihood that harm to the child will result. Yet Cummings may well have believed that the probability of the child's death was anything but likely; she testified that she had put K.H. and her own daughter to sleep in that car seat on many other occasions without it resulting in a child's death or injury. Based on her testimony, the jury could well have concluded that there was only a small chance that harm to the child would result but that—because of the seriousness of the risk—there was a "reasonable probability" or a "decent chance" of harm. But the act must be both unreasonable and one that causes a likelihood that harm to the child will result for the criminal offense of child endangerment to have been committed.

If only the first of those two tests—unreasonable conduct—is met, there still is civil liability for negligence. When we cause injury to another by failing to act as a reasonably prudent person would and the harm is reasonably foreseeable, there's civil liability for negligence. That might well occur in a great many situations involving children. But only when there's a likelihood that harm would result does the negligent act become the crime of child endangerment.

In my view, the jury should be instructed that something is a reasonable probability or a likelihood only if the chance of it occurring is more likely than not. The majority suggests that because the defendant has only asked for the specific words our Supreme Court used in *Fisher*—"a reasonable probability," "a likelihood," and "something more than a faint or remote possibility"—we need not consider whether these terms mean more likely than not. But the defendant argues not only that the jury should have been told that "a likelihood" was required but also that the jury should have been told that "a likelihood that harm to the child will result." In combination, a reasonable juror would understand that the language urged by the defendant on appeal would mean that the chance of harm must have been more likely than not. As I have

explained, I think that's the most reasonable interpretation of the words used in *Fisher*, which contains the same words that the defendant claims should have been used. Accordingly, the defendant's argument necessarily contends that the verdict would have been different had the jury understood that the act had to be more likely than not to cause the harm that occurred.

Whether we consider daycare providers or parents, this essential aspect of the crime of child endangerment must not be lessened. At some time in a child's life, just about every parent does something that—in hindsight—the parent realizes wasn't reasonably prudent in terms of the child's safety. Perhaps you let your child ride a bike without a helmet, or gave up on the argument with your 17-year-old son about putting on his seatbelt. Or you let your young child play with a sharp stick or even play in a normally calm creek. Most of the time, no one is injured. But the potential risks can be serious.

A jury could easily think that there's a "reasonable chance" or a "decent chance" of injury in a high-risk, low-probability situation like the ones I've just described. Arguably, Cummings' case is similar. And with the hindsight bias we all have when we know how badly things turned out in a case like the one now before us, jurors can be tempted to interpret the words liberally toward finding that a crime occurred. Otherwise, since they are not told that there can also be *civil* liability, they may worry that no one will be responsible for a tragic death. But under *Fisher*, we should not put people in prison for child endangerment unless it's more likely than not that the child will be hurt by the action taken.

Before closing, I must address three additional points. First, the majority has relied in part on *State v. Daniels*, 278 Kan. 53, 72-73, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004). I do not find that case useful in analyzing the claim Cummings has made here. The issue before the court in *Daniels* was whether the evidence was sufficient to convict the defendant of child endangerment, not whether the jury instruction was proper. In the court's one-paragraph resolution of the issue of evidentiary sufficiency, the court referenced the change in the pattern jury instruction following *Sharp*. The issue in *Daniels* was not whether that instruction was

erroneous. Second, I should note that K.S.A. 21-3608(a) has two words—"or endangered"—that I have not yet discussed. As written, the statute makes it a crime to intentionally or unreasonably put a child in a situation in which the child "may be injured or endangered." But in construing the statute so as to survive a void-for-vagueness constitutional challenge, the *Fisher* court essentially read the words "or endangered" out of the statute: "The phrase 'or endangered' adds little, if anything to the statute; if a child is endangered, it may be injured; it is the likelihood of injury against which the statute speaks." 230 Kan. at 199-200. Third, the 2010 legislature recodified the entire Kansas Criminal Code, and the new statute on child endangerment makes it illegal to unreasonably and intentionally put a child in a situation in which the child "may be endangered." L. 2010, ch. 136, sec. 78. In the new code, the legislature used endangered, not "injured or endangered." Whether the legislature sought to negate the *Fisher* interpretation of the earlier Kansas statute is not at issue in Cummings' case; her acts occurred well before the new statute was enacted.

Was it more likely than not that an infant strapped into this infant carrier with only the top strap fastened would be harmed? Or, to use the words in *Fisher*, was this a situation "in which injury appears likely and probable," one in which "it is reasonably certain that injury will result"? 230 Kan. at 199. Those questions are for the jury to decide based on a proper instruction. I would reverse the district court's judgment and remand the case for a new trial with a proper jury instruction.