PEOPLE *v* BODLEY

1. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—PRE-
   MEDITATION.

   The element which distinguishes first-degree murder from second-
   degree murder is premeditation (MCLA 750.316, 750.317).

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — MALICE
   AFORETHOUGHT — DELIBERATION.

   Premeditation, an essential element of the crime of first-degree
   murder and the element which distinguishes first-degree murder
   from second-degree murder, encompasses the elements of de-
   liberation and malice aforethought (MCLA 750.316).

3. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — INSTRUC-
   TIONS TO JURY—SUFFICIENCY.

   An instruction to the jury, in a first-degree murder case, which
   stated that first-degree murder must be done with deliberation,
   premeditation, and malice and which later stated that in first-
   degree murder there must be deliberation, malice, and pre-
   meditation, but which did not give further explanation of
   the meaning of premeditation is legally sufficient.

4. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — INSTRUC-
   TIONS TO JURY — APPEAL AND ERROR.

   A conviction of first-degree murder will not be reversed or set
   aside on appeal on the ground that the trial court, although
   properly enumerating all the essential elements, did not give
   the jury an explanation of the meaning of "premeditation"
   where the appellate court, after a review of the record, is not
   convinced that had the charge been more expansive as to the
   element of premeditation a different result would have been
   reached by the jury (MCLA 750.316, 769.26).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 44, 52.
[2] 40 Am Jur 2d, Homicide §§ 44, 45, 52.
[3, 4] 40 Am Jur 2d, Homicide §§ 485, 499, 501.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 October 7, 1971, at Detroit. (Docket No. 11186.) Decided January 21, 1972. Leave to appeal denied, 387 Mich 777.

Isaac Bodley was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Bernard A. Friedman,* for defendant on appeal.

Before: LESINSKI, C. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. Defendant was convicted by a jury of first-degree murder. MCLA § 750.316 (Stat Ann 1971 Cum Supp § 28.548). He appeals of right. We recite the facts.

The whole unfortunate episode arises from a series of neighborhood quarrels between children of the Bodley and Ratcliff families. It appears that Michael Ratcliff, an 11-year-old brother of the deceased, and Diane Bodley, the 12-year-old daughter of the defendant, had a fight. Michael allegedly kicked defendant's daughter in the eye and struck Mrs. Bodley breaking her eyeglasses. Both were taken to the hospital.

Upon arriving home, defendant learned of the foregoing events. He rushed to the hospital. Upon

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

arrival he saw his daughter on a stretcher and his wife emotionally distraught. Mrs. Bodley requested that her husband bring certain clothing needed by their daughter. Instead defendant returned home, obtained a shotgun, and walked to the adjacent Ratcliff home. There he saw Robert Fitzgerald (fiancé of the deceased) and Lorraine Ratcliff, the older sister of Michael. They were standing on the porch. Lorraine was behind a screen door. The shotgun discharged, killing Lorraine and wounding Fitzgerald.

Two witnesses saw the shooting. Fitzgerald testified that defendant raised the gun and purposely shot it. Defendant claimed he brought the gun for protection; that he was fearful of the large number of teenagers who hung around the Ratcliff household. He further claimed he did not determine whether the gun was loaded. He asserted that the shooting was accidental and occurred as he set the weapon on a step leading up to the Ratcliff home. An uninvolved witness testified that the shooting followed a heated discussion of some five to ten minutes between defendant and the deceased. She further testified that she did not see defendant aim it at the deceased.

After the fatal shot was fired, the defendant, according to the testimony of a number of witnesses, entered the house still carrying the weapon. He was heard by one witness to say he was "tired of all this", apparently referring to the continuing altercations between the families. He was also heard to say, I'll kill all the sons-of-bitches in here  *  *  * and go to jail". After the killing, he threatened the deceased's mother and she was heard to beg for her life because she had other children to raise.

The case was submitted to the jury on the charge of first-degree murder and all the lesser included offenses.

It is not claimed that the trial court did not properly define all the other offenses correctly. The infirmity claimed is the insufficiency of the charge as to the elements of first-degree murder, especially a definition or explanation of the terms "premeditation" and "deliberation".

At the outset, we are obligated to distinguish this case from *People* v *Morrin,* 31 Mich App 301 (1971). The critical language in *Morrin* is found on page 336. We quote:

"Having determined that the trial judge erred *only* in submitting the issue of first-degree murder to the jury, we turn to the disposition of this case." (Emphasis supplied.)

Such is not the case here, nor does defendant claim it to be. There was sufficient testimony adduced to carry the question of guilt of murder in the first degree to the jury. Hence, *Morrin* is not controlling here.

We address ourselves now to the stated questions. The first is thus phrased: "Must the court instruct on all the elements of the crime?" Of course, the trial court is obligated so to do. The real question, however, is not whether the trial court must do so, the question is, "did he?"

The second stated question also contains its own answer. We quote: "Was the *failure* to instruct as to premeditation prejudicial to the defendant?" If there were, in fact, a failure to instruct as to premeditation in a first-degree murder charge, it would obviously be prejudicial to the defendant.

The question presented is: Did the trial judge adequately and sufficiently define the elements of mur-

der in the first degree, where the charged killing was not committed in the perpetration of or attempt to perpetrate one of the statutorily enumerated major felonies?

It is fundamental, axiomatic, and settled beyond peradventure of discussion that the distinction between first-degree murder, as charged in this case, and second-degree murder is *premeditation.* Deliberation is only another way of saying the same thing. We choose to use *premeditation* as encompassing *deliberation.* Useless synonyms don't clarify—they only confuse.

This is what the trial judge had to say about the foregoing triune verbal concept of premeditation.

"The principle points to be discussed in this case are the felonious homicides, the homicides which are punishable, and they are murder in the first degree, murder in the second degree and voluntary manslaughter.

"Now we will therefore take up the first, the elements of the crime of murder in the first degree.

"A portion of the definition of the Statute which I read to you would not apply to any of the claimed facts in this case, because the killing was not done in the perpetration of one of the four major felonies: robbery, arson, rape or burglary. *Therefore, the only portion of our Statute which defines murder in the first degree which applies here is where the killing is claimed to have been done with deliberation, premeditation, and malice."* (Emphasis supplied.)

The only other reference to premeditation was:

"Now again, to recapitulate, in murder in the first degree, it is necessary that there be deliberation, premeditation, and malice."

Except as to this precise point, the court's charge evokes no criticism. So the question really gets

down to whether or not, in the case at bar, the jury was sufficiently instructed as to the elements of first-degree murder when the trial judge said premeditation was an essential ingredient—was he required to explain the term further?

*Morrin, supra,* in what must be considered *dicta,* recommends further explanation.

We hold the instruction was legally sufficient. This is not to say that we do not encourage the trial bench, whether requested or not, to expand upon the everyday meaning of "premeditation." In the technical sense, the claimed error, if any, was not preserved. There was no objection to the charge. The issue cannot first be raised on review. *People* v *McClure,* 29 Mich App 361 (1971).

More important to us, however, is the overriding question: Was there a miscarriage of justice? This is crucial because by statute we are admonished that:

"No judgment or verdict shall be set aside or reversed or a new trial granted by *any* court of this state *in any criminal case, on the ground of misdirection of the jury* * * * unless * * * it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCLA 769.26; MSA 28.1096. (Emphasis supplied.)

We find no miscarriage of justice. We have read the record with extreme care. We are not convinced that had the charge been more expansive as to the element of premeditation a different result would have been reached by the jury. The total record supports the verdict. The question was properly one of fact for the jury. We do not interfere.

Affirmed.

All concurred.