(41 P.3d 862)

No. 84,942

STATE OF KANSAS, *Appellee*, v. ADRIAN M. REQUENA, *Appellant.*

Opinion filed November 2, 2001.

*Sandra Carr*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jan Satterfield*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, C.J., GREEN, J., and PADDOCK, S.J.

GREEN, J.: Adrian M. Requena was convicted by a jury of rape. Requena was charged under the theory that he had sexual intercourse with J.C. when she was incapable of giving consent because of her medical conditions or because of the effects of her medications or both, which conditions were known by Requena or were reasonably apparent to him. K.S.A. 2000 Supp. 21-3502(a)(1)(C).

Requena argues on appeal that there was insufficient evidence to support his conviction because J.C. clearly understood the nature and consequences of her sexual intercourse with him and consented to it. Moreover, Requena maintains that he was unaware or it was not apparent to him that J.C. lacked the capacity to consent. In addition, he contends that the trial court erred when it failed to instruct the jury on the meaning of "incapable of giving consent." Finally, he contends that the trial court abused its discretion when it failed to consider his motion for new trial. We disagree and affirm.

J.C. was diagnosed with multiple sclerosis in July 1989. She also suffered from fibromyalgia, osteoarthritis, degenerative joint disease, mitrovalve prolapse, gout, and alcoholism. She had experienced paralyzing depression since 1995, and she had extreme fatigue and memory loss.

In August 1998, Susan Andrey moved in with J.C. because J.C.'s conditions were deteriorating and she needed help with driving, bathing, and other household chores.

J.C. and Andrey became acquainted with Requena at the 12-step program at Alcoholics Anonymous (AA) meetings in the winter of 1998. J.C. and Requena played cards with other friends at the fellowship, and they watched videos together at J.C.'s house. J.C. considered Requena to be her friend. J.C. testified he was very helpful to her; he drove her to see friends, fixed her son's car, and took care of her cat while she was gone. J.C. was 49 and Requena was 31 years old, and there was no physical intimacy or sexual relationship between them.

In March 1999, J.C. was taking various medications, including Prozac and Remeron, a sleeping medication. On March 26, 1999, J.C. and Andrey went to Burger King for dinner and to the American Legion for bingo games. During the bingo game, J.C. took a Remeron tablet. J.C. fell asleep at the bingo table. Andrey waited until the crowd of bingo players had left, and then she helped J.C. to the car.

Andrey and J.C. went home at approximately 10 p.m., and Andrey put J.C. in a chair, where she fell asleep. Andrey then took J.C. to her bedroom, but J.C. could not take off her jeans because

they were tight. They decided J.C. would just have to sleep in her clothes. When Andrey left the room, J.C. was wearing a T-shirt, sweatshirt, jeans, and socks.

The next thing that J.C. remembered was Andrey asking her, "What was Adrian doing naked in your bed this morning?" J.C. replied, "Adrian, are you sure you don't mean Robert?" This conversation occurred about 10 a.m. J.C. realized Robert was in a halfway house in Wichita, so it could not have been him; she was puzzled but went back to sleep. She woke up close to noon and went to the bathroom. She was surprised that she had on only her T-shirt and nothing else. J.C. had general soreness in the vaginal area, and her thighs were a little more sore than normal.

Andrey went to an AA meeting that night and returned around 9:30 p.m. J.C. was awake, and they talked about the incident. J.C. decided to report it to the police and to go to the hospital for a rape exam.

J.C.'s memory began to resurface during the rape exam and an interview with Officer Tim Baker. J.C. recalled having oral sex performed on her and having a penis in her vagina accompanied by quite a bit of pain. She further recalled having her legs around the man and, feeling the back of his head, saying, "Oh, Robert, you didn't cut your braid off, did you?"

Requena was charged with rape and aggravated burglary. At trial, Diana Schunn, a registered nurse who examined J.C., testified J.C.'s injuries were "consistent with blunt penetrating trauma that we typically see in history of sexual assault." Stephen Greer, a mutual friend of J.C. and Requena, testified he received a letter from Requena which stated:

"Steve, I was wondering if you would call [J.C.] and ask her why she would want to put me away for 20 years. I didn't rape her. We had sex, and she knows it. I still want us to stay together so I can help her, but only if she wants to."

Requena did not testify or present any other witnesses on his behalf.

Requena was found guilty of rape—sexual intercourse with J.C. when she was incapable of giving consent because of mental deficiency or disease or when she was incapable of giving consent

because of the effect of any alcoholic liquor, narcotic, drug, or other substance, which condition was known by the offender or was reasonably apparent to the offender. See K.S.A. 2000 Supp. 21-3502(a)(1)(C).

After the jury convicted Requena of rape, he moved for a new trial. The trial court, however, determined that because the motion had been filed late, it had no jurisdiction to consider the motion.

Requena argues on appeal that there was insufficient evidence to support the conviction for rape because J.C. clearly understood the nature and consequences of her sexual intercourse with him and consented to it. Moreover, Requena asserts that he was unaware or it was not apparent to him that J.C. lacked capacity to consent.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Incapacity to consent

In *State v. Chaney*, 269 Kan. 10, 5 P.3d 492 (2000), the single issue was whether there was sufficient evidence to support Chaney's rape conviction under K.S.A. 21-3502(a)(1)(C) (victim incapable of giving consent because of the effect of alcohol). Our Supreme Court found there was sufficient evidence the victim was both psychologically and physiologically impaired due to the effects of alcohol, disagreeing with an earlier determination by the Court of Appeals that a rape victim would have to be intoxicated to the point of unconsciousness to be unable to consent. 269 Kan. at 19-20.

The test for consent under this rape statute provision is

"whether the individual understands the nature and consequences of the proposed act. [Citation omitted.] Therefore, in order to preserve the constitutionality of the provision, the definition of 'nature and consequences' must be sufficiently clear to permit the person proposing sex, and the jury, to discern whether the individual can give legal consent. If an individual can comprehend the sexual nature of the proposed act, can understand he or she has the right to refuse to participate, and

possesses a rudimentary grasp of the possible results arising from participation in the act, he or she has the capacity to consent. Anything more open-ended would become impermissibly vague." *State v. Ice,* 27 Kan. App. 2d 1, 4-5, 997 P.2d 737 (2000).

Requena points to several facts which he asserts are inconsistent with a finding of J.C.'s lack of capacity to consent: (1) J.C. maintained significant control over her own life, and she had never been declared incompetent; (2) J.C. controlled her own medications; and (3) J.C. was found to be competent to testify over defense objection. Requena further argues that J.C. had experienced varying stages of consciousness and lucidity and that no evidence was presented that J.C. was actually unconscious or incapacitated at the time of the alleged incident.

According to *Chaney,* unconsciousness is not required to show inability to consent. 269 Kan. at 19. Furthermore, from the evidence presented, the jury could have concluded that because of the effects of J.C.'s various medications and because of her worsening medical condition, these circumstances prevented her from consenting to sex. The *Chaney* court stated that we should give great deference to such a finding. 269 Kan. at 20.

Moreover, it is a *non sequitur* to conclude from the premise, based on factors 1, 2, and 3, cited earlier by Requena, that therefore J.C. had the capacity to consent to sexual intercourse at the particular time it began. Such a conclusion is unjustified by the premise. J.C. could have possessed all the qualities mentioned under these factors, yet still not have had the capacity to consent when Requena commenced the act of sexual intercourse with her. As a result, this argument fails.

## Knowledge

The rape conviction under K.S.A. 2000 Supp. 21-3502(a)(1)(C) requires a finding that Requena was aware or that it was reasonably apparent to him that J.C. lacked capacity to consent. Requena argues there was not sufficient evidence to establish this knowledge.

Requena claims it is "entirely possible, based upon the evidence presented, that J.C. gave every appearance of being fully conscious and actively participating in consensual sex even though she was

not fully conscious at the time." However, Requena has failed to acknowledge a possible alternative scenario. It is entirely possible, based on the evidence presented, that Requena was aware of J.C.'s confused mental condition or that because of her condition, it was reasonably apparent to him that she did not have the capacity to consent to having sex with him.

J.C.'s own testimony shows that she did not recall the incident very clearly and that she was incapable of recognizing Requena. There is sufficient evidence that J.C. was both psychologically and physiologically impaired due to the effects of her medical conditions and medications. See *Chaney*, 269 Kan. at 20. As a result, Requena's argument fails.

Definition of "Incapable of Giving Consent"

Requena next argues that the trial court should have given a jury instruction on the meaning of "incapable of giving consent."

At trial, Requena failed to request a jury instruction to define the meaning of "incapable of giving consent." Therefore, we must decide if the failure to give this instruction is clearly erroneous. The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction there is a real possibility the jury would have handed down a different verdict had the instruction been given. See *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

In *Keim v. State*, 13 Kan. App. 2d 604, 605, 777 P.2d 278 (1989), Keim contended the words "incapable of giving consent because of mental deficiency or disease" were unconstitutionally vague, but the court upheld the constitutionality of the statute, stating:

"The language of [the statute] sufficiently warns a person of common intelligence that engaging in sexual intercourse with one who is mentally handicapped to a degree that he or she cannot understand the nature and consequences of engaging in the act is prohibited. Under normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse. The fact that further questioning may be necessary in some cases to determine if one's partner fully understands the nature and consequences of sexual intercourse, does not render the statute unconstitutional." 13 Kan. App. 2d at 608.

Dealing with the similar language of aggravated criminal sodomy in *State v. Juarez*, 19 Kan. App. 2d 37, 40, 861 P.2d 1382 (1993), *rev. denied* 254 Kan. 1009 (1994), the court stated:

"*Keim* held that a person of common intelligence is capable of determining whether an individual's mental deficiency renders him or her incapable of giving consent. A juror, by definition, is a person of common intelligence. Therefore, when the capacity of a mentally deficient individual to consent to a sexual act is at issue, the jury is capable of determining whether that individual is able to understand the nature and consequences of engaging in such an act. In reaching its determination, the jury should evaluate the individual's behavior in normal social intercourse as well as consider any expert testimony concerning the individual's mental deficiency."

Although Requena acknowledges the above holdings, he insists that the breadth of the phrase "incapable of giving consent" leaves too much room for the jury to speculate.

The trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury or cause it to speculate, that additional terms should be defined. A term which is widely used and which is readily comprehensible need not have a defining instruction. The term "incapable of giving consent" is one which people of common intelligence and understanding can comprehend and is not a term that requires definition. See *State v. Norris*, 226 Kan. 90, 95, 595 P.2d 1110 (1979).

Motion for New Trial

Turning our attention to Requena's last argument, he argues that the trial court erred in refusing to consider his motion for new trial. K.S.A. 22-3501 in part provides:

"A motion for a new trial based on the ground of newly discovered evidence may be made within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 10 days after the verdict or finding of guilty or within such further time as the court may fix during the 10-day period."

On December 2, 1999, the jury found Requena guilty of rape and not guilty of aggravated burglary. Requena sent a note to the court requesting an appointment of new counsel on January 10, 2000. A hearing was held on the next day, and Requena stated to the court that he was not satisfied with the assistance he had received from his trial counsel and requested new counsel. The court

told the trial counsel to file a motion for new trial before January 18; however, the counsel stated he could not argue his own ineffective assistance of counsel in a motion for new trial. The trial counsel made a motion to withdraw and a motion for new trial at the end of the hearing. The court denied the motion to appoint new counsel on January 14, 2000, stating that appointing new counsel between trial and sentencing would be more detrimental than helpful to Requena. The trial counsel moved to withdraw because he could not present the motion for new trial based on ineffective assistance of counsel due to the conflict of interest. The court appointed new counsel on January 27, 2000. A pro se motion for new trial was filed on February 15, 2000.

The court denied the motion for new trial, stating the court did not have jurisdiction after the 10-day period from the jury verdict. However, the court proceeded to discuss the merits of Requena's claim of ineffective assistance of counsel.

The ineffective assistance of counsel inquiry involves mixed questions of law and fact, which are subject to de novo review. *State v. Orr*, 262 Kan. 312, 321, 940 P.2d 42 (1997).

Before this court will find that a defendant was deprived of effective assistance of trial counsel, the defendant must prove that (1) counsel's performance was sufficiently deficient to render that performance below that guaranteed by the Sixth Amendment, and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. *State v. Rice*, 261 Kan. 567, 599, 932 P.2d 981 (1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 [1984]).

Requena's complaints of counsel's ineffectiveness included: (1) counsel's failure to request that the judge recuse himself because he presided over Requena's criminal case in 1989; (2) counsel's failure to particularly cross-examine Greer, as to the date of the intercourse; (3) counsel's failure to present a witness regarding the medical examination of J.C.; and (4) counsel's failure to cross-examine Schunn regarding whether the sex was forcible rape.

Turning our attention to Requena's first complaint, we note that there is nothing in the record on appeal indicating that Requena

requested the judge to recuse himself before the trial. Furthermore, we note that Requena failed to argue any prejudice or bias by the trial court. Second, as to the trial counsel's failure to cross-examine Greer, the record indicates that the court asked trial counsel whether he had had an opportunity to consult with his client and determine whether he wanted to ask the witness any questions. The trial counsel indicated that he had. Third, Requena wanted to call a forensic scientist with the KBI to present findings of an examination of some items. As the trial court stated, it is doubtful the witness could have presented evidence to show the sexual act was consensual as opposed to nonconsensual. Fourth, counsel cross-examined Schunn, and Schunn testified that she did not make any statement as to whether the sexual act could be consistent with consensual or nonconsensual sex.

Requena's rape conviction was based on the victim's incapacity to consent because of her disease or because of the effect of her medications and was not based on force or fear. Therefore, it is questionable whether the evidence that Requena wanted to present would have been helpful to his defense.

The trial court was aware of Requena's dissatisfaction with his counsel following the guilty verdict, and there was no new information in his motion for new trial. The trial court stated: "Based on what I know of this trial and based on my remembrance of it and based on the complaints that you've made, I cannot conclude that Mr. Patterson failed in his responsibility as your counsel."

Regarding the trial court's determination on the issue of ineffective assistance of counsel, this court stated:

"We believe deference should be shown to the observations of the trial judge who was in a much more advantageous position than this court to appreciate the tactics of counsel. Moreover, the decisions now being questioned by [the defendant] are clearly within the province of the defense counsel after consultation with his client. [Citation omitted.]" *State v. Smith,* 27 Kan. App. 2d 152, 154, 999 P.2d 280 (2000).

Under the circumstances, the trial court did not abuse its discretion in refusing to consider Requena's untimely motion for new trial. Even assuming it was an abuse of discretion, the trial court did consider the merits of the motion—Requena's claim of ineffective assistance of counsel. The trial court did not find Requena's

trial counsel's performance sufficiently deficient to render that performance below that guaranteed by the Constitution. As a result, there was no reversible error in denying the motion for new trial. See *Rice*, 261 Kan. at 599.

Affirmed.