(102 P.3d 1195)
No. 90,906

STATE OF KANSAS, *Appellee*, v. KEVIN L. PATTON, *Appellant*.

Opinion filed December 23, 2004.

*Virginia A. Girard-Brady*, assistant appellate defender, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before GREEN, P.J., MCANANY, J., and BUKATY, S.J.

MCANANY, J.: Kevin L. Patton appeals from his convictions for attempted first-degree murder, aggravated robbery, and conspiracy to commit first-degree murder. We affirm.

Patton, age 16, and Phillip Boyce, both residents of a foster home in Scranton, Kansas, sneaked out, stole a pickup truck, and went to Arrington, Kansas, where they spent the night at the house of a woman Boyce knew. After abandoning the truck in Jefferson County, the boys found their way to Atchison County where they stayed the night in Boyce's father's barn. The next day, Boyce stole

a gun and the boys hitched a ride to a location near the home of Roy Blauvelt.

Patton and Boyce arrived at Blauvelt's home. They were without transportation, and their plan was to steal a vehicle from Blauvelt. Before knocking on the door, Boyce asked Patton several times to join him in shooting Blauvelt. Patton testified that he refused each request. Boyce suggested that they could get Blauvelt in the car and push him out. Patton agreed that they could.

Blauvelt invited Patton and Boyce into his house. The boys told Blauvelt that their vehicle was stuck in the mud and asked if he could help. Blauvelt, who was 80 years old, told them he was too old to help but after he finished his meal he would give them a ride to someone who might be able to help them.

After returning to his meal, Blauvelt noticed Patton pacing back and forth with a cigarette in his hand. Patton testified that he was nervous at the time because he was concerned about what Boyce might do. Blauvelt then heard a "boom," threw a hand up, and saw blood run down his arm. Blauvelt believed that a blood vessel in his head had burst. When Blauvelt asked for help, he saw Patton and Boyce run out of the house. Blauvelt then went outside and saw Patton driving off in his truck. Blauvelt went to his daughter's house to call 911. When he arrived at the hospital, Blauvelt learned that he had been shot behind the right ear.

After the shooting, Patton and Boyce jumped into Blauvelt's diesel truck, with Patton driving, and escaped by crashing through a gate. Blauvelt testified that the diesel truck had to have been running before he was shot in order to warm it up before driving off. They drove to Boyce's ex-girlfriend's house in St. Joseph, Missouri. They hid the gun in St. Joseph and drove on to Richmond, Missouri.

Two weeks after the shooting, Patton surrendered at the Atchison County Sheriff's Office. After Patton and his parents signed a waiver of rights form, Patton described what happened and where the gun could be found. Patton claimed that after Boyce shot Blauvelt, Boyce handed him the gun and told him to shoot Blauvelt but that he refused. Boyce was arrested and admitted that he shot Blauvelt.

Patton was charged with attempted first-degree murder, aggravated robbery, conspiracy to commit first-degree murder, and conspiracy to commit aggravated robbery. The State moved to prosecute Patton as an adult, and Patton conceded the motion. Patton was tried as an adult and was convicted on all four counts. The district court later dismissed the charge of conspiracy to commit aggravated robbery, finding that it merged with the conspiracy to commit first-degree murder charge. Patton was sentenced to 310 months' imprisonment. Patton appeals.

*Premeditation*

The trial court did not define the term "premeditation" when it instructed the jury on the elements of first-degree murder. Patton did not object to this omission. Accordingly, we review this omission using the clearly erroneous standard. *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). If the omission is erroneous, we will find it clearly erroneous if we are firmly convinced there is a real possibility that the jury would have rendered a different verdict had the error not occurred. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

We must keep in mind that the concept of premeditation applies to Boyce's act in shooting Blauvelt. The State pursued an aiding and abetting theory in charging Patton with attempted first-degree murder. Thus, Patton had to act with the intent to aid and abet Boyce in shooting Blauvelt. The issue of premeditation applies to Boyce's state of mind when the shooting took place, not Patton's. Instruction 9 detailed the elements of attempt. Instruction 16 dealt with aiding and abetting. Instruction 15 listed the elements of first-degree murder.

Instruction 15 generally complies with PIK Crim. 3d 56.01. However, the PIK committee suggests that the term "premeditation" should be defined when giving the instruction. No Kansas case has addressed whether the failure to define premeditation constitutes clear error. Florida and Michigan have addressed this issue. In *Anderson v. State*, 276 So. 2d 17 (Fla. 1973), the court stated:

"'It is rudimentary, and should require no citation of authority, that the one essential element which distinguishes first-degree murder from second-degree murder is premeditation. The term "design" as mentioned in each of the two degrees, means the specific intent to kill, and in second-degree murder such specific intent may, or may not, be present. The difference is, that in second-degree murder, if it is present, it is not premeditated. Thus, premeditation is the ever-present distinguishing factor; and no doubt should be left in the minds of the jury as to its complete and full legal import. No door should be left open for confusion as to what it means. Without the full and complete definition of premeditation, the jury would have neither an understanding of what they were looking for to determine it, nor what to exclude to reject it.' [Citation omitted.]

"Failure to define 'premeditation' in a first degree murder charge is reversible error, even where no objection was made by the defendant. [Citation omitted.]" 276 So. 2d at 18-19.

See also *Taylor v. State*, 695 So. 2d 1293 (Fla. Dist. App. 1997), in which the court concluded that the district court's inadvertent error in failing to define premeditation required reversal.

Michigan takes a different approach. In *People v. Bodley*, 38 Mich. App. 27, 195 N.W.2d 803 (1972), the district court did not define premeditation but instructed the jury that in order to find the defendant guilty, it must find that the killing was done with " 'deliberation, premeditation, and malice.' " 38 Mich. App. at 31. On appeal, the court stated that while it did not encourage the trial court to fail to expand on the everyday meaning of premeditation, the instruction given by the trial court was legally sufficient. The court was not convinced that a different result would have been reached by the jury had it been instructed on the definition of premeditation.

While no Kansas case has dealt with this precise situation, there are Kansas cases which are instructive. In *State v. Mitchell*, 269 Kan. 349, 355, 7 P.3d 1135 (2000), the court stated:

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]"

In *State v. Requena*, 30 Kan. App. 2d 200, 206, 41 P.3d 862 (2001), the court stated:

"The trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury or cause it to speculate, that additional terms should be defined. A term which is widely used and which is readily comprehensible need not have a defining instruction."

In *State v. Fisher*, 230 Kan. 192, 194-95, 631 P.2d 239 (1981), the court discussed the meaning of the term "may" in the child endangerment statute. The court stated that in ordinary usage, the term "may" "connotes a possibility, however remote; it means to be in some—perhaps small—degree likely, or to stand a chance of occurring." 230 Kan. at 194. The court concluded that the term "may" as used in the child endangerment statute "means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." 230 Kan. at 195.

In *State v. Sharp*, 28 Kan. App. 2d 128, 13 P.3d 29 (2000), the defendant was convicted of endangering a child. On appeal, he claimed that the jury instruction defining the elements of endangering a child was clearly erroneous. The PIK instruction described the charged offense as follows: "That the defendant intentionally and unreasonably caused or permitted [the child] to be placed in a situation in which [the child]'s life, body, or health might be injured or endangered." 28 Kan. App. 2d at 134. Sharp claimed that the court's failure to define the term "might" was clear error.

Citing *Fisher*, the court noted that the term "may" as used in the relevant statute has been held to have a different meaning than its general use.

"Although the *Fisher* court goes on to conclude the statute 'is clear and understandable; that ordinary persons can determine what conduct is proscribed by a common-sense reading of the statute,' its earlier discussion on the different meanings of the word 'may' iterates why it is important that that particular word be defined in the context of this statute. [Citation omitted.] Simply saying a child 'might' be injured, in its ordinary meaning, is not sufficient to convict someone of endangering a child. [Citation omitted.] The logical conclusion of this analysis means the term 'might,' as used in the jury instruction, must be judicially defined in the same manner." *Sharp*, 28 Kan. App. 2d at 134-35.

The court in *Sharp* reversed and remanded the case for retrial after concluding that the trial court's jury instruction did not reflect

the proper legal standard and that there was a real possibility that the jury would have reached a different verdict if the term "might" had been properly defined. 28 Kan. App. 2d at 135.

We conclude that the test to determine if the trial court is required to define "premeditation" turns on whether the commonly understood lay definition of "premeditation" differs from the legal definition of the term.

Webster's II New College Dictionary 872 (2001) defines "premeditation" as "1. The act of speculating, arranging, or plotting in advance. 2. Contemplation and plotting of a crime in advance, showing intent to commit the crime." PIK Crim. 3d 56.04(b) defines "premeditation" as follows:

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

The commonly understood definition of "premeditation" is consistent with the legal definition. Each requires a party to form the design or intent to kill in advance. Theoretically, the lack of a definition may favor Patton. Premeditation under its commonly understood lay definition suggests a lapse of time for contemplation and plotting that probably exceeds the time necessary for premeditation under the legal definition. The legal definition includes the explanation that there is no specific time period required for premeditation but that premeditation requires more than "the instantaneous, intentional act of taking another's life." Thus, the lack of a definition in the jury instructions and the jury's reliance on its lay understanding of the term may favor a defendant, since the lay definition suggests that a longer period of reflection is needed to form the requisite state of mind.

Finally, Patton is unable to show that there is a real possibility the jury would have reached a different verdict had it been instructed on the definition of premeditation. Patton was charged with attempted first-degree murder and conspiracy to commit first-degree murder. In Instruction 16 the jury was instructed on the acts that constitute aiding and abetting and their consequence.

Since Boyce was the shooter, Boyce was the person who had to have premeditation to commit murder. See *State v. DePriest*, 258 Kan. 596, 603, 907 P.2d 868 (1995).

Patton admitted that Boyce discussed shooting Blauvelt before entering Blauvelt's home. Boyce had premeditation to kill Blauvelt. It is unlikely the jury's verdict would have been different had the court defined premeditation. The trial court's failure to define the term "premeditation" was not clearly erroneous.

*Attempted First-Degree Murder—Sufficiency of the Evidence*

Patton claims there was insufficient evidence to convict him as an aider and abettor of an attempted first-degree murder. We review all the evidence in the light most favorable to the State to determine if a rational jury could have found Patton guilty beyond a reasonable doubt. *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

Patton does not dispute that Boyce attempted first-degree murder. Instead, Patton claims that a rational jury could not have found that he aided and abetted in the attempted first-degree murder. The court instructed the jury:

"A person who, either before or during its commission, intentionally aids, abets, advises, or counsels another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

In *State v. Wakefield*, 267 Kan. 116, 977 P.2d 941 (1999), defendant and Scott, his partner-in-crime, burglarized the home of the Brittains while the family slept upstairs. Scott suggested they go upstairs and shoot the Brittains in their beds before leaving. Wakefield argued against it, pointing out that they had all the household goods they wanted to steal downstairs and there was no need to kill the residents who were asleep. Scott then went upstairs himself and shot and killed the Brittains while Wakefield continued downstairs loading the Brittains' belongings into the truck. In finding sufficient evidence that Wakefield aided and abetted Scott in the premeditated murders, the court stated:

"It is well established in Kansas law that the mere presence of an accused at the time and place of the crime alleged is not sufficient to make the accused guilty of the crime, but if from the facts and circumstances surrounding the defendant's presence at the time and from the defendant's conduct it appears that the defendant's presence did in fact encourage someone else to commit the criminal act, guilt may be inferred. [Citation omitted.] In the absence of anything in a person's conduct showing a design to encourage, incite, aid, abet, or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that the person assented to the commission of the crime, lent his or her countenance and approval thereto, and thereby aided and abetted the commission of the crime. [Citation omitted.]" 267 Kan. at 121.

In *Wakefield*, the defendant actively attempted to dissuade Scott from murdering the Brittains. Here, when Patton and Boyce discussed shooting Blauvelt before entering Blauvelt's residence, Patton did not attempt to discourage Boyce but simply refused to pull the trigger himself. Patton willingly entered Blauvelt's residence and did not do anything to prevent the shooting. He stayed in the room during the shooting, knowing what Boyce intended to do. They needed Blauvelt's truck to make their escape. To accomplish this, they had to start the truck before they entered the house. After the shooting, Patton ran with the gun and drove the getaway vehicle. We may examine Patton's actions after the shooting in determining whether Patton aided in and abetted the commission of the crime. *Wakefield*, 267 Kan. at 123. Viewing the evidence in the light most favorable to the State, the evidence was sufficient to enable a rational jury to find beyond a reasonable doubt that Patton aided and abetted Boyce in attempted first-degree murder.

*Conspiracy to Commit First-Degree Murder—Sufficiency of Evidence*

Patton also claims that there was insufficient evidence to convict him of conspiracy to commit first-degree murder. Again, we review all the evidence in the light most favorable to the State to determine if a rational jury could have found Patton guilty beyond a reasonable doubt. Jury instruction 10 stated in relevant part:

"The defendant is charged with the crime of conspiracy to commit first degree murder. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.  That the defendant agreed with another person to commit or assist in the commission of the crime of first degree murder;

"2.  That the defendant did so agree with the intent that the crime of first degree murder be committed;

"3.  That the defendant or any party to the agreement acted in furtherance of the agreement by shooting Roy Blauvelt; and

"4.  That the act occurred on or about the 4th day of October, 2002, in Atchison County, Kansas."

Jury instruction 14 stated:

"A conspiracy is an agreement with another or other persons to commit a crime or to assist in committing a crime, followed by an act in furtherance of the agreement.

"The agreement may be established in any manner sufficient to show understanding. It may be oral or written, or inferred from all of the facts and circumstances.

"A person may be convicted of a conspiracy only if some act in furtherance of the agreement is proved to have been committed. An act in furtherance of the agreement is any act knowingly committed by a member of the conspiracy in an effort to effect or accomplish an object or purpose of the conspiracy. The act itself need not be criminal in nature. It must, however, be an act which follows and tends towards the accomplishment of the object of the conspiracy. The act may be committed by a conspirator alone and it is not necessary that the other conspirator be present at the time the act is committed. Proof of only one act is sufficient."

In order to prove a conspiracy, the State is required to show an agreement between the parties, which may be either tacit or express. The meeting of the minds can be expressed or implied from the acts of the parties. *State v. Smith*, 268 Kan. 222, 228, 993 P.2d 1213 (1999). As stated in *State v. Mincey*, 265 Kan. 257, 268, 963 P.2d 403 (1998): "Criminal defendants can be held responsible for crimes committed in furtherance of the conspiracy that may not have been authorized by a particular coconspirator but were reasonably foreseeable."

Patton and Boyce conspired to steal one of Blauvelt's vehicles. Before entering Blauvelt's home Patton and Boyce discussed not only shooting Blauvelt but also the alternative of pushing him out of a moving vehicle. Patton agreed with the latter alternative. There was an agreement that they would cause Blauvelt injuries that

could kill him, and Patton agreed to one of the two means to that end. Once the agreement was made, Patton entered the house with Boyce knowing that Boyce (who was carrying a gun) favored, and was likely to carry out, the former alternative. Blauvelt's attention was directed at Patton when Boyce shot him. Boyce then handed the gun to Patton, and Patton ran from the house with the gun. Patton drove the truck as they fled the scene. There was substantial evidence that Boyce and Patton had an agreement to kill Blauvelt and take one of his vehicles. A rational jury could have found beyond a reasonable doubt that Patton engaged in a conspiracy to commit first-degree murder.

*Prosecutorial Misconduct*

Patton claims the prosecutor committed misconduct during his closing arguments by commenting on the guilt of Patton. Though Patton did not object to the prosecutor's comments, the trial court had a duty under K.S.A. 60-261 to protect Patton's right to a fair trial by preventing the occurrence of prosecutorial misconduct. *State v. Holmes*, 272 Kan. 491, 498, 33 P.3d 856 (2001).

We use the familiar two-step process in analyzing allegations of prosecutorial misconduct. We first examine whether the prosecutor's comments constitute misconduct. During closing arguments, the prosecutor made the following remarks:

"Why would Phillip Boyce expect Kevin Patton to shoot him other than that they had an agreement to do so?
"That's Kevin Patton's own words.
"And he panicked.
"He chickened out.
"But its not good enough to chicken out.
"He participated.
"He aided.
"He abetted.
"And he's guilty."

Additionally, in discussing Patton's statement at the Atchison County Sheriff's Department, the prosecutor stated, "An evaluation of Kevin Patton's statement indicates his, I call it, consciousness of guilt, meaning he knew he was guilty and he was [conscious]

of that fact." The prosecutor referenced the term "consciousness of guilt" two more times during rebuttal.

Patton claims that these statements improperly set forth the prosecutor's personal opinion that Patton was guilty. The prosecutor's comment that Patton was guilty was improper. This comment is similar to the prosecutor's comments in *State v. Gholston*, 272 Kan. 601, 622, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002), that " 'the truth is there's your murderer right there.' " However, after examining the context of the statement, and the jury instructions, the court in *Gholston* held that the comment did not constitute reversible error.

This comment by the prosecutor about Patton, standing alone, is not egregious. We presume that prosecutors do not prosecute criminal defendants who they believe are innocent. We presume that the average juror harbors similar thoughts. The fact that an attorney in the heat of battle on one occasion fails to preface an observation with the phrase "The evidence establishes that . . ." is not, standing alone, grounds for reversal. The prosecutor's comment was uttered only once. There is nothing demonstrating ill will on the part of the prosecutor. The jury was given proper jury instructions on its duty to determine guilt, the burden of proof, and that the comments by counsel were not evidence. This comment that Patton was guilty was unlikely to have changed the result of the trial. Accordingly, the prosecutor's comment that Patton was guilty is not reversible error. See *State v. McHenry*, 276 Kan. 513, 523, 78 P.3d 403 (2003).

Patton objects to the prosecutor's comments regarding his "consciousness of guilt." The remarks do not indicate the prosecutor's personal belief of Patton's guilt. Rather, they reference Patton's state of mind when doing certain acts. The prosecutor referred to certain evidence as displaying a consciousness of guilt. These remarks constitute fair comment on the evidence. They were not improper.

Affirmed.

BUKATY, J., concurring. I would conclude that it is error for a trial court to omit a jury instruction defining the term "premedi-

tation" in the case of a defendant charged with first-degree murder or an attempt or conspiracy to commit first-degree murder.

It is the element of premeditation that separates first-degree murder from lesser offenses of homicide and that results in substantially higher penalties than other levels of homicide. I believe the Florida rule referred to by the majority and found in *Anderson v. State*, 276 So. 2d 17 (Fla. 1973), provides the best opportunity for a fair and just verdict when jurors are asked to determine the guilt of one charged with these crimes.

I seriously question whether there is a commonly understood meaning among jurors as to the definition of "premeditation." The fact the dictionary states a definition does not of itself establish such a common understanding. Even if the dictionary definition somewhat parallels that of the legal definition found in PIK Crim. 3d 56.04(b) (2003 Supp.), we cannot know if all jurors have the same understanding as that expressed in the dictionary. As stated in *Anderson*, "[T]hus, premeditation is the ever-present distinguishing factor; and no doubt should be left in the minds of the jury as to its complete and full legal import. No door should be left open for confusion as to what it means." In order to eliminate such a possibility in this state, the jury should have the benefit of the PIK instruction on this point in cases involving first-degree murder or attempt or conspiracy to commit that crime.

Since Patton did not request the instruction defining "premeditation," we review its omission by the clearly erroneous standard. I agree with the majority that in view of the abundance of evidence on the point, there is little doubt that Patton's coconspirator, Boyce, had the requisite premeditation to kill the victim here. Patton and Boyce discussed shooting the victim before entering his house. While Patton apparently balked at shooting him, he agreed that they could get the victim in the car and push him out. It appears that even had the definition of premeditation been given, it is unlikely the jury would have rendered a different verdict. Failure of the trial court to instruct on the definition of premeditation under these particular facts does not require reversal.