**STATE of Minnesota, Respondent,**

v.

**Verna Marie CYRETTE, Appellant.**

**No. CX–01–294.**

Court of Appeals of Minnesota.

Dec. 4, 2001.

Mike Hatch, Attorney General, St. Paul; and Alan L. Mitchell, St. Louis County Attorney, James T. Nephew, Assistant County Attorney, Duluth, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by WILLIS, Presiding Judge, LANSING, Judge, and HARTEN, Judge.

## O P I N I O N

WILLIS, Judge.

Appellant Verna Marie Cyrette challenges her conviction of gross-misdemeanor child neglect, arguing that (1) the district court's jury instruction defining the term "willfully" was erroneous and (2) the evidence was insufficient to support her conviction. Because the jury instruction was not erroneous and the evidence supports appellant's conviction, we affirm.

### FACTS

In December 1999, appellant Verna Marie Cyrette resided with her two-year-old daughter, L.R.C.; her eight-year-old son, D.A.[1]; and her 25–year–old son, Mitchell Benjamin Cyrette. D.A. has cerebral palsy and requires 24–hour supervision. Although Cyrette and Mitchell have undergone special training to care for D.A. at home, personal-care attendants are necessary to supervise and assist with D.A.'s needs.

On December 1, 1999, at approximately 10:45 p.m., Duluth police officer James Lesar was dispatched to Cyrette's residence to check on the welfare of two children. When Lesar arrived, he looked through a porch window and saw L.R.C. watching television in the living room. Lesar tried to get her attention by tapping on the window, but she did not respond. After pounding loudly on the door and receiving no response, Lesar contacted the dispatch-er and asked him to phone the residence. The dispatcher called, but no one answered.

Lesar then informed his supervisor, Sergeant Evangeline Devlin, of the situation. Devlin arrived at the residence and tried to get L.R.C.'s attention by knocking on the window. Receiving no response, Lesar and Devlin eventually forced entry into the residence. Devlin looked after L.R.C. while Lesar searched the home. Lesar found D.A. asleep in an upstairs bedroom. After searching the rest of the upstairs, Lesar searched the basement area, including Mitchell's bedroom, but found no one else in the residence. D.A. was transported by ambulance to a local hospital, and L.R.C. was taken to a shelter.

Two days later, Officer Leigh Wright questioned Cyrette about the events of December 1, 1999. Officer Wright testified that (1) Cyrette said that she left her residence that day between 1:30 and 2:00 in the afternoon to pick up a bus pass and then went drinking at several bars; (2) Cyrette told Wright that she returned home at about 10:30 p.m., sent home D.A.'s personal-care attendant, Theresa Jordan–Teets, and then took a cab to a bar; (3) Cyrette said that she left the bar at 12:30 a.m., passed out at a bus stop, and that Mitchell eventually picked her up and took her home; (4) Cyrette said that she first realized her children were missing when she got up the next morning; (5) when Wright asked Cyrette if she thought it was safe to leave her children alone, Cyrette responded that "she thought it was safe to leave the kids all night alone because they don't wake up at night"; (6) Cyrette told Wright that she locked the door before she left and thought she had checked on D.A., but she was not sure because she was

---

1. At the time of sentencing on the charge here, Cyrette's parental rights to L.R.C. had been terminated and D.A. had been placed in permanent foster care.

"pretty drunk" and may have been in a "black-out"; and (7) Cyrette said nothing suggesting that she had left the children with another adult.[2]

Cyrette's defense at trial was that Mitchell was home when she left for the bar. Mitchell testified that (1) he returned home that evening about 8:50 p.m. and entered the residence through the basement door; (2) he was so exhausted that he "went straight to bed" and "drifted off to sleep"; (3) because he was so exhausted, he would not have heard the police breaking into the residence or the officer inspecting the basement area where he slept; (4) he woke up around midnight to get a glass of water and discovered that the children were missing; and (5) although he was concerned about the children's absence, he assumed that they were with the police or at the hospital and eventually went back to sleep.

Personal-care attendant Theresa Jordan–Teets testified that (1) Mitchell left the residence through the basement door; (2) she locked the basement door after Mitchell left and did not see him again that evening; (3) Cyrette was drunk when she returned home that evening; (4) Cyrette asked her to stay so that she could "go out for a longer time"; (5) she told Cyrette that she could not stay; and (6) as she was leaving, she saw Cyrette leave in a cab parked outside the residence; (7) suspecting that L.R.C. and D.A. had been left alone, Jordan–Teets returned to the residence, where she saw L.R.C. in the living room; (8) she tried to get L.R.C.'s attention by pounding on the door, but L.R.C. did not respond; and (9) she called her employer, who eventually contacted the police.

A jury found Cyrette guilty of gross-misdemeanor child neglect, a violation of

Minn.Stat. § 609.378, subd. 1(a)(1) (1998). This appeal follows.

## ISSUES

I. Did the district court err in its jury instruction defining "willfully," as the term is used in the child-neglect statute, Minn. Stat. § 609.378, subd. 1(a)(1) (1998)?

II. Was there sufficient evidence to support the jury's verdict that appellant neglected her children in violation of Minn. Stat. § 609.378, subd. 1(a)(1) (1998)?

## ANALYSIS

### I.

▆▆ The district court instructed the jury regarding the meaning of "willfully," as the term is used in the child-neglect statute. *See* Minn.Stat. § 609.378, subd. 1(a)(1) (1998). Cyrette did not object to the instruction. Failure to object to jury instructions at trial generally results in a forfeiture of the right to appeal on that error. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998). But we may consider the issue on appeal if we find plain error affecting substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998); Minn. R.Crim. P. 31.02. To establish plain error, the party must show that (1) there was error, (2) the error was plain, and (3) the error affected the party's substantial rights. *Id.* Although Cyrette argues that the district court's instruction was error, she does not claim that the error, if any, was plain or that it affected her substantial rights. Nevertheless, we will review the instruction under the plain-error standard in the interests of justice. *See* Minn. R. Civ.App. P. 103.04 (court has discretion to address any issue as justice requires).

---

**2.** Cyrette testified that she did not tell Wright about Mitchell being home because the police had previously beaten Mitchell and she was scared to get him involved.

The district court followed the model jury instruction for neglect of a child, found in 10 *Minnesota Practice,* CRIMJIG 13.88 (1999), which is derived from Minnesota's child-neglect statute. *See* Minn. Stat. § 609.378 (1998). Neither the model jury instructions nor the child-neglect statute defines "willfully." The court gave the following instruction regarding the meaning of the term:

> There's one other thing I have to go over with you because the word "willfully" appears in that, and which is indicative of intent. And for purposes of this case, I'm just going to tell you that the statutes, essentially, say—that means "willfully or intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or believes that the act performed by the actor if successful will cause that result.

Relying on *State v. Bowers,* 178 Minn. 589, 228 N.W. 164 (1929), Cyrette contends that the district court wrongly defined "willfully." In *Bowers,* the court defined willfully, as it was used in a second-degree assault statute, to mean "with a bad purpose or an evil intent." *Id.* at 591, 228 N.W. at 165. Cyrette argues that the district court should have used this definition of willfully in instructing the jury here. We disagree.

The *Bowers* court defined willfully in the context of a criminal code very different from the one that now exists. *Bowers* was decided in 1929, when Minnesota's criminal code used words such as "corrupt" and "malicious" to describe criminal intent. *See* Minn. Gen. Stat. § 9907, ch. 93 (1923). At issue in *Bowers* was the appellant's claim "that the evidence is insufficient to show that the injury complained of was willfully inflicted by the defendant, that there was any intent to harm the young woman." *Bowers,* 178 Minn. at 590, 228 N.W. at 164. After noting that the then-most-common definition of "willfully," as used in a penal statute, was that it means with a bad purpose or an evil intent, the court concluded that "[w]here one person wrongfully and intentionally assaults and inflicts bodily harm upon another, the evil intent is apparent from the act itself, and further proof of intent is not necessary." *Id.* at 591, 228 N.W. at 165.

We conclude that the *Bowers* court, at base, defined "willfully" to mean with "intent," as that term is used generally in the current criminal code and that the difference between "evil intent" in 1929 and criminal "intent" in 2001 is more the result of linguistic evolution than an attempt to describe different states of mind. Current dictionary definitions of "willful" confirm this shift. The *American Heritage College Dictionary* currently defines willful as "said or done on purpose; deliberate." *American Heritage College Dictionary* 1543 (3rd ed. 1997). And *Black's* defines willful as "voluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* 1593 (7th ed. 1999).

In large measure to avoid issues such as that now before us, when Minnesota revised its criminal code in 1963, terms such as "willful" were abandoned in defining criminal intent. *See* Minn.Stat. Ann. § 609.02 advisory comm. cmt. (West 1963).

> The revised criminal code sought to

> state more clearly than do present statutes the particular criminal intent or purpose required for each particular crime. Terms in the present statutes such as "willful," * * * have produced much confusion and uncertainty as to what mental state is intended. Throughout the proposed criminal code, the word "intentionally" or "with intent to" has been used.

*See Maynard E. Pirsig, Proposed Revision of the Minnesota Criminal Code,* 47 Minn. L.Rev. 417, 422 (1963).

Consequently, Minn.Stat. § 609.02, subd. 9 (1998), provides:

> When criminal intent is an element of a crime in this chapter, such intent is indicated by the term "intentionally," the phrase "with intent to," the phrase "with intent that," or some form of the verbs "know" or "believe."

Twenty years after attempting to purge the criminal code of the terms "willful" or "willfully," in 1983 the legislature enacted the child-neglect statute, which provides:

> A parent, legal guardian, or caretaker, who *willfully* deprives a child of necessary food, clothing, shelter, health care, or supervision appropriate to the child's age, when the parent, guardian, or caretaker is reasonably able to make the necessary provisions and the deprivation harms or is likely to substantially harm the child's physical, mental, or emotional health is guilty of neglect of a child.

Minn.Stat. § 609.378, subd. 1(a)(1) (emphasis added). The statute is, therefore, an anachronism in the criminal code, but we find nothing in the legislative history of the statute to suggest that the legislature intended "willfully" to mean anything other than "intentionally."

■ The child-neglect statute criminalizes negligence. Our reading of the statute finds support in tort law, where the term "willfully" means "an aggravated form of negligence." *See* Prosser & Keaton on Torts, 212 (5th ed. 1984). "Willfully" applies to conduct that is negligent, but that "is so far from a proper state of mind that it is treated in many respects as if it were so intended." *Id.* at 213. The most common meaning assigned to willfully in the tort context is that the

> actor has *intentionally* done an act of an unreasonable character in disregard of a

known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

*Id.* (emphasis added).

■ Jury instructions must be construed in their entirety and will be upheld so long as they convey to the jury the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). Because the district court's instruction did not misstate the elements of criminal neglect of a child, we conclude that the district court did not err by instructing the jury that "willfully" means intentionally. *See generally State v. Pendleton,* 567 N.W.2d 265, 270 (Minn. 1997) (holding that a jury instruction is error if it materially misstates the law).

## II.

■ When considering a claim of insufficient evidence, a reviewing court's only inquiry is whether, on the facts in the record and legitimate inferences to be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). The court must view the evidence in the light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *Id.*

■ Viewing the evidence in the light most favorable to the verdict here, the evidence is sufficient to support Cyrette's conviction. First, although Cyrette's defense at trial was that Mitchell was home with L.R.C. and D.A., the jury's verdict indicates that it disbelieved this testimony, which was contradicted by the testimony of Jordan–Teets. *See id.* Second, Cyrette tried to convince Jordan–Teets to stay with the children so that she could return

to the bar. Lastly, Cyrette told officer Wright that she thought it was safe to leave the children alone because "they usually slept through the night." We conclude that the evidence was sufficient to permit the jury to find Cyrette guilty of child neglect.

## DECISION

Because the district court's jury instruction regarding the meaning of "willfully" was not erroneous and the evidence is sufficient to show that Cyrette neglected her children, we affirm her conviction.

**Affirmed.**