STATE of Minnesota, Appellant,

v.

Tiffany Ann TICE, Respondent,

Raymond Lloyd Tice, Respondent.

Nos. A04–255, A04–256.

Court of Appeals of Minnesota.

Sept. 14, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, Administration Center, St. Cloud, MN, for appellant.

Mary M. McMahon, McMahon & Associates Criminal Defense, Ltd., Roseville, MN, for respondents.

Considered and decided by WILLIS, Presiding Judge; LANSING, Judge; and HUDSON, Judge.

## OPINION

WILLIS, Judge.

The state appeals from a pretrial order granting a motion to dismiss charges of child neglect and endangerment for lack of probable cause. The district court concluded that the child-neglect and child-endangerment statutes require that the situation in which the children were left was more likely than not to cause substantial harm to the children. We affirm.

## FACTS

On March 2, 2003, Waite Park police responded to a call reporting that three children, two of whom were later determined to be six years old and the third eight months old, were alone in a vehicle in a retail-store parking lot. When the police arrived at the parking lot, they found the children sitting alone in a locked vehicle. The car's heater was on and the engine was running. The outside temperature was approximately seven degrees. The police noted that the three children were appropriately dressed for the weather and that they did not appear upset.

The children's parents, respondents Raymond Lloyd Tice and Tiffany Ann Tice, returned to the vehicle approximately 40 minutes after leaving the children to enter a nearby pet store. Respondents told the police that they had left the children alone in the vehicle because the youngest child was sleeping, and they anticipated being in the store for only a brief time. Before leaving their children alone, respondents had admonished the children to stay in the car and not to let anyone into the car.

The state charged respondents with child neglect and child endangerment, in violation of Minn.Stat. § 609.378, subd. 1(a)(1), (b)(1) (2000). The district court granted respondents' motion to dismiss the charges for lack of probable cause. The court focused on the requirement in both statutes that the defendant's act or omission be "likely to substantially harm the child's physical, mental, or emotional health...." Minn.Stat. § 609.378, subd. 1(a)(1) (defining child neglect); see also Minn.Stat. § 609.378, subd. 1(b)(1) (defining child endangerment with identical language). The district court, citing *Black's Law Dictionary* as well as *Merriam–Webster's Collegiate Dictionary*, construed the term "likely" to mean that harm would more likely than not result from the conduct. This appeal follows.

## ISSUE

Do Minnesota's child-neglect and child-endangerment statutes, Minn.Stat. § 609.378, subd. 1(a)(1), (b)(1) (2000), require the state to prove that the situation in which a child is placed is more likely than not to cause substantial harm to the child?

## ANALYSIS

The state argues that the district court erred by granting respondents' mo-

tion to dismiss child-neglect and child-endangerment charges for lack of probable cause because the district court improperly construed the term "likely" in each of the statutes. The state may appeal a dismissal order based on a lack of probable cause if dismissal was based on a question of law. *State v. Kiminski*, 474 N.W.2d 385, 389 (Minn.App.1991), *review denied* (Minn. Oct. 11, 1991). The state may not appeal an order dismissing for lack of probable cause if the district court's dismissal was based solely on a factual determination. Minn. R.Crim. P. 28.04, subd. 1(1)(a) (2002). This court must determine, as a threshold matter, whether the dismissal was based on a factual or legal determination. *State v. Duffy*, 559 N.W.2d 109, 110 (Minn.App.1997).

█ The district court's order, which cites case law, dictionary definitions, and rules of statutory construction in construing the statutory language, is based on a legal determination. *See State v. Linville*, 598 N.W.2d 1, 2 (Minn.App.1999) (holding that probable-cause dismissal based on statutory interpretation was a legal determination and therefore appealable). Whether a statute has been properly construed is a question of law, which this court reviews de novo. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

Under Minn.Stat. § 609.378, subd. 1(a)(1) (2000), the crime of child neglect is committed when

> [a] parent ... willfully deprives a child of necessary ... supervision appropriate to the child's age, when the parent, guardian, or caretaker is reasonably able to make the necessary provisions and the deprivation harms or is likely to substantially harm the child's physical, mental, or emotional health.

Under Minn.Stat. § 609.378, subd. 1(b)(1) (2000), the crime of child endangerment is committed when

> [a] parent '... endangers the child's person or health by:
>
> (1) intentionally or recklessly causing or permitting a child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death.

The district court, relying on *Black's Law Dictionary* and *Merriam–Webster's Collegiate Dictionary* and distinguishing opinions from this court, concluded that the term "likely," as it is used in the definitions of both statutes, requires that respondents' actions must be more likely than not to cause substantial harm to respondents' children. The court concluded that under this construction of the statute the state lacked probable cause to support the charge.

*Black's Law Dictionary* formerly defined "likely" as meaning:

> Probable. In all probability. Likely is a word of general usage and common understanding, broadly defined as of such nature or so circumstantial as to make something probable and having better chance of existing or occurring than not.

*Black's Law Dictionary* 925 (6th ed.1990) (citations omitted).[1] Another dictionary defines "likely" as "having a high probability of occurring or being true." *Merriam–Webster's Collegiate Dictionary* 721 (11th ed.2003).

As the district court noted, this court has addressed the language of the child-neglect and child-endangerment statutes in two opinions, although neither focuses on the term "likely."

---

1. A subsequent edition of *Black's Law Dictionary* does not define the term "likely." *See*   *Black's Law Dictionary* 938 (7th ed.1999).

In *State v. Cyrette,* 636 N.W.2d 343, 348 (Minn.App.2001), *review denied* (Minn. Feb. 19, 2002), this court construed the term "willfully" in the child-neglect statute to mean "intentionally." In discussing various definitions of "willfully," this court did refer to a common meaning of the term in tort law requiring disregard of a risk "that was so great as to make it highly probable that harm would follow." *Id.* (quoting Prosser & Keeton on Torts 213 (5th ed.1984)). But in quoting that definition of "willfully" with approval, this court was not implying that the term "likely" requires a high degree of probability.

In *State v. Hatfield,* 627 N.W.2d 715, 720 (Minn.App.2001), *aff'd,* 639 N.W.2d 372 (Minn.2002) (addressing only conspiracy conviction), this court affirmed a conviction of child endangerment. In doing so, we rejected the argument that under the statute "there must be some showing that the children suffered actual and grievous harm." *Id.* at 719. The opinion notes that the statute requires that substantial harm be "likely." *Id.* at 720. The opinion does not attempt to define the term "likely." But as the district court noted, the opinion states that "the mere potential for substantial harm to children is sufficient to constitute child endangerment." *Id.*

The phrase "mere potential" in *Hatfield* must be construed in context, as a response to the appellant's argument that actual harm is required. In using the adjective "mere," this court was not attempting to define the degree of potential for harm that would satisfy the statute. It was only contrasting the potentiality of harm with the actuality of harm the appellant in *Hatfield* argued was an element of the offense.

The state argues that this court should look to the definition of "dangerous weapon" in Minn.Stat. § 609.02, subd. 6 (2000),

and CRIMJIG 13.10 to construe the term "likely."

In *State v. Graham,* 366 N.W.2d 335, 338 (Minn.App.1985), this court noted that the use of the term "likely" in the definition of "dangerous weapon" in Minn.Stat. § 609.02, subd. 6, could have the effect of improperly diluting the state's burden of proof. This court quoted with approval a Model Penal Code definition of "deadly weapon" that included devices "known to be capable of" producing death or great bodily injury. *Id.* at 338 n. 1 (citation omitted). The standard jury instruction was later amended accordingly. 10 *Minnesota Practice,* CRIMJIG 13.10 (4th ed.1999). But *Graham* did not suggest that "known to be capable of" was synonymous with "likely," only that the Model Penal Code definition was more consistent with the state's burden of proof. 366 N.W.2d at 338 n. 1.

But even if *Graham* had defined "likely" as "known to be capable of," we are faced here with the use of the term in a different context. *See generally State v. Taylor,* 594 N.W.2d 533, 535 (Minn.App.1999) (holding that court must construe statutory language in context). Here, we must construe "likely" in the context of the potential consequences of the defendant's acts or omissions. As used in the definition of "dangerous weapon," the term "likely" is used in the more abstract context of the potentialities of a particular weapon or device. In that context, the phrase "known to be capable of" has a relevance that it lacks, for example, in assessing what might occur when children are left unsupervised.

■ This court must strictly construe the language of criminal statutes. *See State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002). All reasonable doubt concerning legislative intent must be resolved in favor of the defendant. *Id.* We must

also consider that the child-neglect statute "criminalizes negligence." *Cyrette*, 636 N.W.2d at 348. And ordinary negligence is presumed to be insufficient to constitute a crime, absent a clear indication of a legislative intent to do so. *State v. Grover*, 437 N.W.2d 60, 63 (Minn.1989). Thus, we must presume that the child-neglect statute, as well as the child-endangerment statute, requires more than a simple deviation from the standard of care. *See id.;* Minn.Stat. § 609.378, subd. 1(a)(1) (requiring willful conduct for child neglect), (b)(1) (requiring intentional or reckless conduct for child endangerment).

■ Civil negligence requires that the harm that results be reasonably foreseeable. *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn.1980). The risk of harm must be greater than being merely "within the realm of any conceivable possibility." *Kuhl v. Heinen*, 672 N.W.2d 590, 593 (Minn.App.2003). The risk of harm required by the criminal statutes at issue here must be even higher, at least absent a clear indication of a contrary legislative intent. And, as this court noted in *Cyrette*, the legislature has required willful conduct in the child-neglect statute, "an aggravated form of negligence." 636 N.W.2d at 348 citing Prosser & Keeton on Torts 212 (5th ed. (1984)). Thus, while respondents' conduct may have been ill-advised, a clear legislative intent appears to criminalize only conduct that is *more* than ordinary civil negligence.

The presumption against criminalizing ordinary negligence and the rule of strict construction of criminal statutes, therefore, support the district court's construction of the term "likely" as meaning "more likely than not." Thus, the court properly dismissed the complaint based on this reading of the child-neglect and child-endangerment statutes.

## DECISION

The district court properly dismissed the complaint because the child-neglect and child-endangerment statutes require that respondents' conduct was more likely than not to result in substantial harm to the children.

**Affirmed.**